# ROBBINS v. ROLLINS'S EXECUTORS.

# ROLLINS'S EXECUTORS v. ROBBINS.

APPEALS FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Nos. 237, 861. Argued April 18, 19, 1888. — Decided May 14, 1888.

Analyzing the contract which is the subject of litigation, and which is set
forth at length in the opinion, this court holds that the court below was
in error in sustaining and allowing against Robbins Rollins's claim for
the payment of the two mortgages or deeds of trust, and subrogating him
to the rights of the mortgagees Low, and the Mutual Benefit Life Insur-
ance Company; and that the deed of subrogation from the latter com-
pany to the German-American Savings Bank was wrong and unauthorized,
and should be vacated and declared void without the necessity of the in-
tervention of a cross-bill for that purpose.

IN EQUITY. Both parties appealed from the final decree.
The case is stated in the opinion.

*Mr. H. H. Wells* and *Mr. Samuel Shellabarger* for Rollins's
Executors.

*Mr. John Selden* and *Mr. George F. Edmunds* for Robbins.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The bill in this case was filed on the 25th of October, 1883,
by Edward A. Rollins, of Philadelphia, against Zenas C. Rob-
bins, of the city of Washington, to recover $122,000, with in-
terest, and, on the failure of Robbins to pay the same, to have
certain property in Washington, of which Rollins claims to be
mortgagee in possession, sold to satisfy said claim. Rollins,
the complainant, claims title to the matter in suit, by purchase
in November, 1880, from one Keyser, the receiver of The Ger-
man-American Bank; and said bank derived title from The
German-American Savings Bank of Washington by purchase
in October, 1877; and the latter acquired their principal in-
terest in the matter from John Hitz, William F. Mattingly,

and Charles E. Prentiss by deeds dated in May and June, 1875 — the said Hitz, Mattingly, and Prentiss having procured the said interest for the said savings bank in the manner hereafter mentioned. The transactions out of which the controversy took its rise were as follows:

In 1873, the defendant Zenas C. Robbins was in possession of the property known as the Federal Building, situated on the southeast corner of Seventh Street and F Street northwest, in the city of Washington, immediately opposite the Post-Office Department Building, being one hundred feet on Seventh Street and 129 feet 3½ inches on F Street. Part of this property, namely, the one hundred feet front on Seventh Street, and forty feet deep on F Street, he owned in fee simple; the rest of it, 89 feet 3½ inches on F Street, and 100 feet deep, lying immediately in rear of the first part, he held by leases, with contracts giving him the privilege of purchasing the fee at any time during the continuance of the leases. This leasehold portion was divided into four lots fronting on F Street, and each running back from F Street one hundred feet in depth, and he had a separate lease and contract for privilege of purchase on each; the rent of each being sixty dollars per month, amounting to $2880 per annum for all four lots; and the purchase prices, at which he had the privilege of purchasing the lots, were respectively $8000, $12,000, $12,000, and $10,000 — the whole amounting to $42,000. The lot owned by Robbins in fee, fronting on Seventh and F streets, was incumbered by two mortgages, or deeds of trusts in the nature of mortgages, one for $10,000 held by one Daniel Low, and the other for $25,000 held by The Mutual Benefit Life Insurance Company of New-Jersey. There was also a judgment lien of $10,500 on the leasehold property.

In or about August, 1873, the Board of Public Works of the city of Washington cut down the grade of the streets around Mr. Robbins's corner several feet, and rendered the buildings on his property somewhat insecure; the board, pretending that they were in danger of falling, in October, 1873, ordered them to be taken down and removed. Robbins remonstrated, and some arrangement was made for strengthening them.

Robbins claimed damages against the city for the injury done
to his property, and an award of $4098 was afterwards made
and paid to the bank, after it came into possession of the
property as hereafter mentioned.

On the 10th of September, 1873, Hitz, the president of The
German-American Savings Bank, and in its interest, made a
contract with Robbins to purchase the whole property, of
which the following is a copy:

"WASHINGTON, D. C., *September* 10*th*, 1873.
" Agreement between Zenas C. Robbins and John Hitz, both
of the city of Washington, District of Columbia.

" The said Robbins does hereby agree to sell unto the said
Hitz, his heirs or assigns, the real estate at the northwest
corner of square numbered four hundred and fifty-six (456) in
the city of Washington, D. C., for the sum of one hundred
and seventy thousand dollars, said property fronting one hun-
dred (100) feet on Seventh Street and one hundred and twenty-
nine (129) feet four and one half (4½) inches, more or less, on
F Street. Forty (40) feet on F Street, at the corner of Seventh
Street, by one hundred (100) feet, more or less, in depth, is
owned by said Robbins in fee. Twenty (20) feet on F Street,
by one hundred (100) feet in depth, more or less, is a lease-
hold, with privilege of purchase, for $10,000.00. Twenty-
three (23) feet on F Street by one hundred (100) feet in depth,
more or less, is a leasehold, with like privilege, for $8000.00.
Twenty-three (23) feet on F Street by like depth is leasehold,
with like privilege, for $12,000.00. Twenty-three (23) feet
four and one half (4½) inches on F Street by like depth is
leasehold, with like privilege, for $12,000.00. Said sale is to
date as October 1st, 1873.

" All taxes upon said property are to be paid by said Rob-
bins, including the taxes for the year ending June 30th, 1873,
and all rents up to October 1st, 1873, are to be received by
him, provided none of said rents are payable in advance. All
rents due on said leasehold property up to said October 1st,
and all interest on incumbrances, are to be paid by said Rob-
bins.

" All rents subsequent to said October 1st are to be received by said Hitz; said Hitz is to assume the incumbrances on said property, viz.:

| | | |
|---|---|---:|
| Deed of trust to Daniel Low . . . . . . . . | | $10,000 00 |
| "        "        Mutual Benefit Life Ins. Co., New-ark, N. J. . . . . . . . . | | 25,000 00 |
| Purchase money under Larner lease . . . . . | | 10,000 00 |
| "        "        "        Gideon " . . . . . . | | 8,000 00 |
| "        "        "        Shanks " . . . . . . | | 12,000 00 |
| "        "        "        lease from executors of Jacob Gideon . . . . . . . . . | | 12,000 00 |
| | | $77,000 00 |
| And the balance in cash or its equivalent . . . | | 93,000 00 |
| | | $170,000 00 |

" Any other incumbrances are to be paid by said Robbins, and the conveyance to said Hitz is to be free from any dower right in the wife of said Robbins.

" The purchase by said Hitz is conditional on his approval of the title to said property and the increase by the German-American Savings Bank of its capital stock according to law.

" Z. C. ROBBINS.  [SEAL.]

" JOHN HITZ.  [SEAL.] "

Robbins in his testimony says that immediately after signing this contract he went to Virginia to visit some friends, and did not return until the first of November, 1873. He says that he then found the Bank in possession of all the property, and proceeds as follows:

" A few days after my return from Virginia Mr. Hitz came to me and made me this proposition: He said that if I preferred to change the sale into a lease of the property perhaps we could make a new negotiation, and he made this proposition — that he and his associates, Mr. Mattingly and Mr. Prentiss, would take the property on a ten years' lease; would pay the purchase money under the four leases; would pay the

incumbrances of record, amounting to $35,000; would pay me $600 a month during the term of the lease; pay all the taxes that might be assessed on the fee-simple property and leasehold estates, and would relieve me of all care and responsibility, expense, and charges of every name, nature, and description relating to the fee-simple and the leasehold estates during the whole term of the lease, provided I would embody in the lease the privilege of the purchase of my fee-simple property by the lessees for the sum of $93,000 at any time during the term of the lease. Another provision of the contract was, he gave me the option of a conveyance of the four leasehold estates by paying the several amounts of purchase money named in the leases, with eight per cent interest from the date of payment."

Thereupon the first agreement was abandoned, and the following agreement and lease, upon which the present rights and obligations of the parties depend, was entered into. We set it out at large, because it is the foundation of the whole controversy in the present suit, and almost every part of it is important in settling the rights of the litigants:

"This indenture, made this 25th day of October, A.D. 1873, by and between Zenas C. Robbins, of the first part, and John Hitz, William F. Mattingly, and Charles E. Prentiss, of the second part, all of the city of Washington, District of Columbia.

"Whereas the said party of the first part is seized in fee simple of all that certain parcel of land in square numbered four hundred and fifty-six (456), in the city of Washington, D. C., contained within the following metes and bounds: Beginning for the same at the northwest corner of said square and running thence east along the line of F Street forty (40) feet, and running south with this width one hundred (100) feet, it being the same that was conveyed to the said party of the first part by George S. and Juliana Gideon, executors of Jacob Gideon, deceased, by deed dated July 21, 1869, and recorded in Liber D, No. 10, folio 288 et seq., of the land records of the District of Columbia:

"And whereas the said party of the first part has a lease-

hold interest in a certain part of lot numbered fourteen (14) in said square, particularly described in a certain indenture of lease from George S. Gideon, trustee for Catharine C. Gideon, to the said party of the first part, dated November 30, 1864, and duly recorded in Liber N, C. T., No. 52, folio 101 *et seq.*, of said land records, with the privilege of purchasing said property in fee simple for the sum of eight thousand ($8000) dollars, and has also a leasehold interest in a certain other part of said lot numbered fourteen (14), particularly described in a certain indenture of lease from Catharine N. Shanke and John Hitz and wife to the said party of the first part, dated May 31, 1865, and duly recorded in Liber N, C. T., No. 57, folio 456, of said land records, with the privilege of purchasing said property in fee simple for the sum of twelve thousand ($12,000) dollars; and has also a leasehold interest in a certain other portion of said lot fourteen (14) and a part of lot numbered fifteen (15) in said square, particularly described in a certain indenture of lease from George S. and Juliana Gideon, executors of Jacob Gideon, deceased, to the said party of the first part, dated May 31, 1865, and duly recorded in Liber N, C. T., No. 59, folio 128 *et seq.*, of said land records, with the privilege of purchasing said property in fee simple for the sum of twelve thousand ($12,000) dollars; and has also a leasehold interest in a certain part of lot numbered thirteen (13) in said square, particularly described in a certain indenture of lease from George S. Gideon, trustee for Christiana Larner, to the said party of the first part, dated November 30, 1864, and recorded in Liber N, C. T., No. 52, folio 106 *et seq.*, of said land records, with the privilege of purchasing said property in fee simple for the sum of ten thousand ($10,000) dollars, the whole of said property, fee simple, and leasehold interests, having a front on Seventh Street west in said square of one hundred (100) feet and on F Street north of one hundred and twenty-nine (129) feet three and one-half (3½) inches:

" Now, therefore, this indenture witnesseth: That the said party of the first part, for and in consideration of the rents, covenants, and agreements hereinafter reserved and contained to be paid down and performed by the said parties of the

second part and the survivor of them, his heirs, executors, administrators or assigns, does hereby assign, transfer, and set over unto the said parties of the second part and the survivors and survivor of them, his executors, administrators, and assigns, all said leasehold interests in said several parcels of land and said leases, and the unexpired portion of said several terms, together with all the rights and privileges and subject to the obligations in said several leases contained, and does also hereby demise, lease, and to farm let unto the said parties of the second part and the survivors and survivor of them, his executors, administrators, and their and his assigns, all of said parcels of land so held in fee simple as aforesaid by the said party of the first part for the term of ten years from and after the first day of November, A.D. 1873, and thence next ensuing, and fully to be complete and ended, they and he yielding and paying unto the said party of the first part, his heirs and assigns, the sum of six hundred (600) dollars per month on the first day of each and every month during the said term, and observing and performing all and singular the covenants and agreements set forth in these presents on their and his part to be observed and performed; and the said parties of the second part, for themselves and each of their heirs, executors, and administrators, do hereby covenant with the said party of the first part, his heirs and assigns, in manner following, to wit: That they, the said parties of the second part, and the survivors and the survivor of them, his heirs, executors, and administrators and their and his assigns, shall and will pay or cause to be paid said monthly rent as hereinabove stipulated, and shall and will pay and cause to be paid the incumbrances of record against said property, or any portion thereof, the same being two deeds of trust of twenty-five thousand and ten thousand dollars, respectively, and shall and will exercise the said several privileges of purchasing in fee simple granted in said leases by paying or causing to be paid said several amounts of purchase money as provided in said leases, and shall and will pay or cause to be paid all taxes and assessments hereafter levied or imposed upon said property or any portion thereof; and the said party of the first part, for him-

self, his heirs, executors, administrators, and assigns, does hereby covenant with the said parties of the second part and the survivors and survivor of them, his heirs, executors, administrators, and their and his assigns, that he, the said party of the first part, his heirs or assigns, shall and will, at any time within said term of ten years, convey unto the said parties of the second part and the survivors and survivor of them and his heirs and their or his assigns, in fee simple, said parcels of land so, held in fee simple as aforesaid by the said party of the first part, free and discharged from all right of dower on the part of the wife of the said party of the first part, on the payment to him, the said party of the first part, or his heirs, executors, administrators, or assigns, of the sum of ninety-three thousand dollars; and, further, that he, the said party of the first part, has full and lawful right to execute these presents, and that he, his heirs, executors, administrators, and assigns, will at any and all times hereafter, when requested so to do, execute and deliver any other or further assurance in law to the said parties of the second part and the survivors and survivor of them, his heirs, executors, and administrators, and their and his assigns, which their or his counsel learned in the law may advise, devise, or require; and it is hereby mutually understood and agreed by and between the parties hereto as follows, viz.: The said party of the first part or those claiming under or through him shall pay all taxes and assessments against or upon said property or any portion thereof up to November 1st, 1873, including the *pro rata* of taxes to this date for the year ending June 30, 1874, and shall also pay or cause to be paid interest on said incumbrances amounting to thirty-five thousand dollars up to said first day of November, and also all rents in leasehold interests to said November 1st, and shall also pay or cause to be paid any and all other incumbrances that may be upon or against said property or any part thereof. Should the said parties of the second part or those claiming under or through them be compelled to pay any sum or sums of money which under these presents ought or should be paid by the said party of the first part or those claiming under him, then the same, with interest at the rate of eight per cent per annum from the

date or dates of payment, shall be a lien upon said property. Should any one of the buildings on said parcels of land or a material portion thereof fall, either from its present condition or in attempting repairs upon the same, then, at the option of the said parties of the second part or those claiming under or through them, this indenture shall be held null and void, and any moneys expended shall be a lien upon said property and be refunded by the said party of the first part and those claiming under or through him, with interest as aforesaid. Should the said parties of the second part or those claiming under or through them fail to exercise said privileges of purchasing the said fee-simple interest in said property so held by said Robbins within said term of ten years from November 1st, 1873, then the said party of the first part, his heirs or assigns, shall be entitled to a conveyance of all of said property by refunding within one year from the expiration of said term of ten years all sums of money paid by the said parties of the second part or those claiming under them, with interest at the rate of eight per centum per annum in the purchase of the fee simple or any portion of said property and in relieving the same of incumbrances created by the said party of the first part. The said parties of the second part and those claiming under or through them shall have the right and privilege of tearing down, altering, or repairing any and all of the buildings on said premises, and of rebuilding or repairing, as they may deem proper. Should the German-American Savings Bank of the city of Washington increase its capital stock for the purpose of purchasing said property, then the said party of the first part is to have the privilege of subscribing for the same to the amount of twenty thousand dollars, upon the same terms as other subscribers.

" In testimony whereof the said parties of the first and second parts have hereunto set their hands and affixed their seals on the day and year first hereinbefore written.

"(Signed)            "Z. C. ROBBINS.

"JOHN HITZ.

"WM. F. MATTINGLY.

"C. E. PRENTISS."

If we analyze this document, we find that, like the first agreement, it treats of the entire property, freehold as well as leasehold, and instead of providing for an absolute sale, trans- fers the leases of the leasehold, with privilege of purchase, and leases the fee-simple part, with like privilege of purchase; the consideration, as before, being the same amount, $170,000, namely, $93,000 for the lot held by Robbins in fee simple, $35,000 to be paid to clear off the mortgages, and $42,000 to be paid to the owners of the four leasehold lots.

Looking at the agreement in parts, we find:

1st. Robbins, for and in consideration of the rents, cove- nants, and agreements to be paid and performed by the par- ties of the second part, assigns to them the leases of the four leasehold lots, with all the rights and privileges conferred thereby; and leases to them the lot held by him in fee simple for the term of ten years, at a rent of $600 per month.

2d. The parties of the second part, on their side, covenant and agree to pay the said monthly rent above stipulated, and the incumbrances of record against the said property, or any portion thereof, specifying the two deeds of trust for $10,000 and $25,000; and further agree, that they will exercise the several privileges of purchasing in fee simple the leasehold lots, by paying the several amounts provided in the leases, namely, [amounting in the aggregate to $42,000]; and further, to pay all taxes, and assessments to be levied on the property or any portion thereof.

Suppose the paper had ended here, could there have been a doubt that the payments to be made by the parties of the second part, namely, the reserved rent, the $35,000 for clear- ing off the mortgages, and the $42,000 for buying in the fee (for themselves) of the leasehold property, constituted the consideration of the lease and assignment made to them by Robbins in the first clause? The parties evidently regarded the privilege of purchasing the four leased lots on F Street for $42,000 as a valuable one. It does not seem at all improbable that Robbins should demand, and that the parties of the sec- ond part should be willing to give, $35,000 (the amount of his mortgages) for this privilege. This would make the four

lots cost them $77,000. If Robbins's 4000 square feet on Seventh Street were worth $93,000, it is not unreasonable to suppose the 8900 square feet fronting on F Street, and lying in the rear of the other, and almost necessary to it, should be worth $77,000. The remaining parts of the agreement are not in conflict with the construction suggested. In the next place,

3d. Robbins gives to the parties of the second part the privilege of purchasing his fee-simple lot at any time during the ten years' lease for the sum of $93,000.

4th. The agreement then provides that Robbins shall pay all interest, rents, taxes, and assessments up to the 1st of November, 1873; and it was further agreed, that if the second party should have to pay any sums of money which Robbins, under the agreement, ought to pay, they should be a lien on the property.

5th. It was provided that if any of the buildings should fall in repairing, etc., the second party should be released from the contract and refunded the amounts paid by them.

6th. It was agreed that if the second party should not exercise their option of buying Robbins's fee-simple property, he should for one year after the expiration of the ten years' term have the privilege of buying them out by refunding all payments they might have made.

Now, none of these provisional exigencies took place. The parties of the second part did not exercise their option of buying Robbins's fee-simple property; nor did he exercise his option of buying them out; and the buildings never fell. In all other respects both parties performed their respective parts of the agreement; Robbins paid all interest, taxes, rents, etc., up to November 1st, 1873, and paid off the $10,500 judgment lien on the leasehold property; and the parties of the second part and their successors in interest, The German-American Savings Bank and The German-American National Bank, paid the rent of $600 per month, paid off the two mortgages or deeds of trust, amounting together to $35,000, and all interest thereon, paid the rents of the leasehold lots, and bought in the fee simple thereof from the owners, at the stipulated amount of $42,000. So that, at the close of the transaction, the parties

stood as follows: Robbins owned his old fee-simple lot on the corner of Seventh and F streets, and the complainant, who purchased the interest of the other parties, owned the four lots on F Street.

This is the whole case; and we can hardly entertain a doubt respecting the rights of the parties. We think that the court below was in error in sustaining and allowing against Robbins the complainant's claim for the payment of the two mortgages or deeds of trust, and subrogating him to the rights of the mortgagees, Low and The Mutual Benefit Life Insurance Company. The deed of subrogation from the latter company to The German-American Savings Bank was entirely wrong and unauthorized, and should be vacated and declared void. Had a cross-bill been filed for that purpose, it should have been so decreed. Remedy can be had by an original bill.

The contract contains no stipulation whatever that the parties of the second part were in any event to have a return of the $35,000 paid in lifting the two mortgages, except in the event of Robbins availing himself of his option to have a conveyance of the whole property — an event which never took place. We cannot interpolate such a stipulation. It is not implied by anything that appears on the face of the contract; nor does anything in the surrounding circumstances authorize or require a construction of the contract that would import such a stipulation into it. The first agreement made with Hitz seems to us to have an entirely opposite effect.

On all the other points raised in the case, we think that the views of the court below were correct.

*The decision is reversed and the cause remanded with directions to dismiss the bill of complaint with costs.*