## HANNAY v. ZERBAN.

*(Common Pleas of New York City and County, General Term.  November 7, 1890.)*

MASTER AND SERVANT—CONTRACT—TERMINATION.

A contract of employment contained the following provisions: "(6) Without any just cause of complaint on the part of [the employer] * * * your engagement is * * * intended to be for one year, * * *. (10) Monthly notice required of either party." It did not appear what the "notice" required by the tenth clause referred to. *Held,* that the right to terminate the contract on a month's notice was not reserved by the tenth clause, as such construction would require the interpolation of additional words. Reversing 8 N. Y. Supp. 97.

Appeal from city court, general term.

Action by George B. F. Hannay against Andrew Zerban. A judgment dismissing the complaint was affirmed by the general term of the city court of New York, (8 N. Y. Supp. 97,) and plaintiff again appeals.

Argued before LARREMORE, C. J., and BOOKSTAVER and BISCHOFF, JJ.

*Robinson, Scribner & Bright,* for appellant.  *Ernest Hall,* for respondent.

BISCHOFF, J.  The defendant was the proprietor of a school in the city of New York, known as the "Lenox Institute," and the "Lenox Annex," and on or about June 16, 1888, entered into an agreement with the plaintiff for the latter's employment, which agreement was as follows:

"ANDREW ZERBAN,

"P. O. Box 94, New York.                    NEW YORK, 18th June, 1888.

"*Mr. G. B. F. Hannay, City*—DEAR SIR: I hereby purpose to stipulate the terms and conditions under which you will act as teacher at the Lenox Institute.  (1) It is intended that you shall teach mathematics, history, geography, and the branches of the English language, as you may be desired, and in accordance with the requirements of the school.  (2) That you will devote your entire time and energy to teach only pupils of the Lenox Institute and the Lenox Annex as may be assigned to you.  (3) That your attendance at school shall average daily from 8:30 A. M. until noon, and on Monday, Tuesday, Thursday, and Friday from 1 till 5:30 P. M.  (4) During the time of the summer vacation you will attend one month daily two hours between 8 and 10 A. M., at school, to correct the repetition and preparatory lessons of the pupils.  (5) Whenever you are desired to do so you will represent towards visitors or representatives of pupils the institute as well within as without the institute building.  (6) Without any just cause of complaint on the part of the institute it is understood that your engagement with the Lenox Institute is by this instrument intended to be for one year, viz., from the 1st day of September A. C. until the same date in 1889.  (7) The summer vacations terminate with the 1st of September, after which date until the formal opening of the school a from three to five hours' daily attendance may be required of you at school.  (8) Your monthly salary of $90 will be paid to you on the last day of each month.  (9) You will teach from the lowest elementary class to the highest ones which the institute may form.  (10) Monthly notice required of either party.                    ANDREW ZERBAN."

"Accepted:                                        G. B. F. HANNAY."

Pursuant to this agreement the plaintiff entered upon his employment, and continued therein until December 31, 1888.  On or about November 28, 1888, the defendant, claiming the right to do so under the agreement, undertook to terminate the plaintiff's employment by a notice in writing, dispensing with his services after December 31st of that year; and defendant thereafter refused to avail himself of plaintiff's services, although the latter offered them, and disputed the former's right to terminate the employment before the expiration of the term agreed upon.  Thereupon the plaintiff brought this action to recover damages for breach of contract; the damages alleged being

the stipulated salary for the months from January to August, 1889, both inclusive, after deducting the plaintiff's earnings from other sources during that period. The agreement was put in evidence on the trial, and plaintiff admitted having received the notice hereinbefore mentioned, purporting to terminate his employment. When the plaintiff rested, the defendant's counsel moved to dismiss the complaint on the ground that, on a proper interpretation of the tenth clause of the contract, the right was reserved to the defendant to terminate the employment upon giving to plaintiff a previous notice of his election to do so; and that, having so elected to terminate the employment, no future salary could accrue to plaintiff, and that for such reason no cause of action was proved. The trial justice, concurring in the views of counsel, dismissed the complaint. The plaintiff thereupon appealed to the general term of the court below, and upon argument the judgment rendered at trial term was sustained.

Upon a careful examination of the agreement and consideration of the question presented for review, I am convinced that the judgment was erroneous, and that the court below, as well as the learned counsel for the parties to this appeal, overlooked an imperative rule governing the interpretation and construction of contracts by the courts. The rule is that in seeking to give effect to the true intent and meaning of the several provisions of a contract, as the same were understood by the parties at the time of its execution, the court is limited to the consideration of the language of the agreement. If there is any ambiguity or uncertainty arising from the employment of certain words, terms, or phrases, the court may ascertain the circumstances surrounding the execution of the contract, and depart from the literal meaning of words, if that be necessary, to conform to the true intent of the contracting parties, and for such purpose may transpose words, and depart from the laws of grammar and punctuation; but the court can go no further. Nothing which is not expressly contained within the language of the contract, or which may not be fairly implied therefrom, can be supplied by the court on any proper theory of interpretation, because the interpolation of any stipulation or provision not expressly or impliedly contained within the language of the agreement would, in effect, be the making of a new contract for the parties by the court. If it appears that any particular provision was intended by the contracting parties to be incorporated into their contract, and that the same has been omitted, the agreement cannot be extended to this omitted provision by any proper process of interpretation. Such omissions can only be supplied by a court of equity, on a proper application for the reformation of the contract. To supply such an omission upon any true theory of interpretation would, in effect, be to set aside the well-known rule that parol testimony cannot be admitted to add to, vary, modify, or contradict the terms of a written contract. The rule is stated in 1 Greenl. Ev. § 277, as follows: "It is to be observed that the rule is directed only against the admission of any other evidence of the language employed by the parties in making the contract, than that which is furnished by the writing itself. The writing, it is true, may be read by the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties; but, as they have constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it, or substituted in its stead. The duty of the court in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of words they have used. It is merely a duty of interpretation,—that is, to find out the true sense of the written words as the parties used them,—and of construction,—that is, when the true sense is ascertained, to subject the instrument in its operation to the established rules of law; and where the language of an instrument has a settled legal construction, parol evidence is not admissible to contradict that

construction." See, also, 2 Pars. Cont. (5th Ed.) 564; 1 Chit. Cont. (11th Amer. Ed.) 105; 2 Whart. Cont. § 661; 1 Add. Cont. 287; *Hudson Canal Co.* v. *Pennsylvania Coal Co.*, 8 Wall. 276; *Gavinzel* v. *Crump*, 22 Wall. 308; *Robbins* v. *Clark*, 127 U. S. 622, 8 Sup. Ct. Rep. 1339; *Brawley* v. *U. S.*, 96 U. S. 168. Applying the above rule in the consideration of the contract it appears that the sixth clause provides for the commencement and duration of plaintiff's term of employment, to-wit, from September 1, 1888, to September 1, 1889, and to be terminated before the expiration of the period limited only upon just cause of complaint on the part of the defendant. The first, second, third, fourth, fifth, seventh, eighth, and ninth clauses of the contract refer exclusively to the services required of the plaintiff, and the manner of paying his salary; and it is not and cannot be contended that these last-mentioned clauses can in any manner be construed as conferring upon either party the right to terminate the employment before its expiration by lapse of time. The tenth clause is as follows: "(10) Monthly notice required of either party;" and in this clause is grounded the contention of the defendant that there was reserved to him a right to terminate the employment upon giving a month's previous notice of his election to do so. It is admitted that the literal and ordinary meaning of the words "monthly notice" is a notice every month, or from month to month, and in this occurs the first violence to the language of the contract in defendant's attempt to justify his right to terminate the employment; for, in so doing, he is forced to admit that the words "monthly notice," a notice from month to month, or every month, imply a continuance of the employment, and therefore negative any claim or right to determine it. And to make the language of the contract consistent with defendant's claim it is necessary to substitute the words, "a month's notice," for the words, "monthly notice." Further, the clause is entirely silent as to the character or purpose of the notice required. There may be many details in the management of a school which could properly be the subject of a monthly notice, or notice every month, or notice from month to month, by the plaintiff to the defendant, or *vice versa;* but there is nothing contained in any portion of the contract which could serve to inform one concerning the nature or object of the notice required. The defendant contends that the notice comprehended by the clause referred to was a notice of the election of either party to the other of his intention to terminate the employment, but from the fact that the agreement in positive language fixes the term for one year from September 1, 1888, to September 1, 1889, and nowhere makes reference to any right by either party to terminate the employment before its expiration by lapse of time, the defendant's contention is wholly arbitrary. It is not and will not be contended that the language of any clause preceding the tenth clause will bear a construction such as the defendant is seeking to maintain. To give effect to his contention one would necessarily be compelled to add to the tenth clause the words, "of his intention to terminate the employment," or words of similar import or effect. Without the addition of such words, one is left to conjecture as to the purport of the required notice, and, from the language of the contract preceding this tenth clause, it is not disclosed that any notice whatsoever was intended to be given by plaintiff to defendant, or by defendant to plaintiff. If it was intended by either party to the contract to incorporate therein a clause conferring upon him the right to determine the employment upon a month's previous notice, the contract is defective in that respect, and to add the words necessary to give effect to the defendant's construction, as attempted by him, would require the incorporation of a provision not contained within the terms of the language of the parties when their contract was reduced to writing. Interpretation cannot be carried to this extent under the legal limit above referred to. It is claimed that the contract should be so construed that effect will be given to every part thereof. This is unquestionably so, provided the

legal inhibition upon the powers of the court is not infringed. An attempt to reconcile the sixth and tenth clauses of the contract before us does not necessarily lead to the conclusion that the notice contemplated by the tenth clause was a notice of election to terminate the employment. There may be many matters as before stated which could be the subject of a notice by one party to the other, and the clear and explicit language of the sixth clause fixing the duration of the employment, and providing that the same should continue to the end of the term stated, unless the defendant had just cause of complaint, precludes the suggestion that a right to determine the employment before the expiration of the term fixed by lapse of time was intended to be reserved by the tenth clause. To carry the construction contended for by defendant into effect, the interpolation of additional words into the contract cannot be avoided, which would not be within the powers and restrictions of the court above indicated as governing the interpretation and construction of contracts. The judgment appealed from should be reversed, and a new trial ordered, with costs.