## COTTAM v. OREGON CITY et al.

(Circuit Court, D. Oregon. December 14, 1899.)

### No. 2,553.

1. FALSE IMPRISONMENT—DEFENSES—EXERCISE OF JUDICIAL AUTHORITY.

The recorder and chief of police of a city cannot be held personally liable in damages for the issuance and service of a warrant for the arrest of a person charged with the violation of an ordinance imposing a license tax upon occupations, although the person arrested was engaged in interstate commerce, and was not, therefore, subject to the provisions of such ordinance. In such case, the ordinance being valid as to occupations which it was within the power of the city to tax, the officers charged with its enforcement were not without jurisdiction of the subject-matter, and are exempt from civil liability for an error in the exercise of such jurisdiction.

2. SAME—MOTIVE OF OFFICERS.

The exemption of judicial officers from civil liability for their official acts cannot be affected by the motives with which such acts are performed, which is a matter for which they are responsible to the public only.

3. SAME—LIABILITY OF MUNICIPAL CORPORATION—VOLUNTARY SUBMISSION TO ARREST.

One who submits to arrest and imprisonment rather than pay a small license fee illegally exacted from him under a city ordinance, and which if paid he might have recovered back without serious injury or damage to himself, cannot maintain an action against the city for false imprisonment.

This was an action to recover damages for alleged false imprisonment. On demurrer to complaint.

Bauer & Greene, for plaintiff.
A. S. Dresser, for defendants.

BELLINGER, District Judge. This is an action brought against Oregon City, a corporation, and against Ryan, who is the recorder, and Burns, the acting chief of police, of the city, for damages resulting from the arrest and imprisonment of the plaintiff on what is admitted to have been a groundless complaint. The action taken by the officers grows out of an ordinance passed by the city requiring all persons selling goods, or soliciting the sale of goods, to pay a license tax therefor. It is alleged that the plaintiff is a citizen of the state of California, and is engaged in soliciting contracts for the sale of merchandise, by the use of samples, in the states of Oregon and Washington, for the M. J. Keller Company, a corporation organized and existing under the laws of the state of California, and a resident and citizen of said state of California, engaged in the business of tailors and manufacturers of shirts. The material allegations of the complaint are:

"That on the 28th day of December, 1897, at Oregon City, Clackamas county, Oregon, the defendants Thomas F. Ryan and Chas. E. Burns, while acting in their official capacities as recorder and chief of police, respectively, of defendant Oregon City, and within the scope of their authority and powers as such officers of said Oregon City, falsely and maliciously, and without reasonable or probable cause, arrested and imprisoned the plaintiff, and deprived him of his liberty for the space of a portion of two days, unlawfully and with force, on a pretended charge of soliciting contracts for the sale of goods, wares, chattels, and merchandise, by canvassing from house to house in Oregon City, without first having obtained a license from said city. That, at said time and place, defendants maliciously, unlawfully, and with force imprisoned plaintiff in the city jail of defendant Oregon City, and forcibly confined him there, in a foul and loathsome cell, during the night of December 28, 1897, whereby plaintiff was subjected to great suffering, pain, and humiliation, and to the great danger of his health. That thereafter plaintiff filed his petition in the county court of the state of Oregon for Clackamas county for a writ of habeas corpus, and on the 30th day of December, 1897, upon the trial of said cause, the plaintiff was released and discharged from the custody of defendants, and said prosecution, arrest, and imprisonment of plaintiff by defendants is wholly ended and determined."

To this complaint the defendants demur.

It is claimed that the ordinance under which the license tax was attempted to be collected from the plaintiff for soliciting orders for goods manufactured in another state is an attempted restriction upon interstate commerce, and is therefore void; that the proceeding under such an ordinance was not for the enforcement of a police regulation, but for the collection of a license tax, and was solely for the private and pecuniary benefit of the city, as distinguished from the public good, public morals, peace, and good order; and that it is only when the acts complained of are in the exercise of this general or police power that the city and its officers are exempt from civil liability.

It is established, upon the authority of the supreme court of the United States, that an ordinance of the character in question, so far as it applies to persons soliciting the sale of goods in behalf of those doing business in another state, is a regulation of interstate commerce, and void. Robbins v. District, 120 U. S. 489, 7 Sup. Ct. 592, 32 L. Ed. 292. The rule does not extend so far as to make the ordinance void, except as it is applied to interstate business, and not then if the solicitor carries his goods with him, and thereby becomes a peddler, and so comes within reach of the general or police power of the state,—a distinction, whether wise or otherwise, that is clearly made, although there was a strong dissent from the chief justice, concurred in by Justices Field and Gray.

If the officers of the city acted without any jurisdiction, if there was a clear absence of jurisdiction, if the ordinance was of such a character that any authority exercised under it was a void authority, the defendants are liable, and this would result in any such case, whether the court was of general jurisdiction or was inferior. There is a presumption that a court of superior jurisdiction acts within its jurisdiction, unless a clear absence of jurisdiction is shown. This presumption does not arise where the jurisdiction of the court is limited, and this puts upon the latter a liability that does not exist in other cases. Cooley on Torts states the reason why the law should

protect the one judge, and not the other, and why, "if it protects one only, it should be the very one who, from his higher position and presumed superior learning and ability, ought to be most free from error," to be because, "a limited authority only having been conferred," "he best observes the spirit of the law by solving all questions of doubt against his jurisdiction"; that, "if he errs in this direction, no harm is done, because he can always be set right by the court having appellate authority over him, and he can have no occasion to take hazards so long as his decision is subject to review"; that, therefore, "the rule of law which compels him to keep within his jurisdiction at his peril cannot be unjust to him, because, by declining to exercise any questionable authority, he can always keep within safe bounds, and will violate no duty in doing so."   But what is to happen when the inferior judicial officer acts upon the opinion that the authority which he exercises is not questionable?   When there is not a clear absence of all authority, but merely the exercise of an erroneous judgment in determining the extent of his authority?   What is "questionable" jurisdiction, for the exercise of which judges of inferior courts are liable in damages?   Does it mean such jurisdiction as may be or as is in fact questioned, or does it mean such a clear absence of jurisdiction as is at once apparent to the ordinary understanding, —such as the taking cognizance of criminal matters by a court of probate?   In other words, does "questionable" jurisdiction mean an unquestionable want of jurisdiction?   Does the inferior court exist merely for the purpose of refusing jurisdiction, or may it exercise the right to determine as to the particular case where jurisdiction of the subject-matter is clearly conferred, without making the judge liable for damages for an erroneous judgment?   The reasons which exempt the court of superior jurisdiction apply equally to the courts of inferior jurisdiction.   If, as is stated, "this rule of exemption from civil liability exists for the benefit of the community, which must have the services of judges unharassed by the continual questioning of their conduct and motives by disappointed litigants" there seems to be no reason why the courts of limited jurisdiction should not, as well as those of superior jurisdiction, be relieved from the consequences of the disappointment caused by the erroneous exercise of their judicial judgment.   The distinction between the two cases is confined to the mere presumption that exists in favor of the court of superior jurisdiction,—to the presumption, in other words, that the court of superior jurisdiction, in acting, has acted within its jurisdiction, unless the absence of all jurisdiction is shown; but, where there is an absence of all jurisdiction in either case, the liability is equal.   Nor is there any reason for the exemption of judges of the superior court of record from liability to civil suit for their judicial acts exercised when there is jurisdiction of the subject-matter, though irregularity and error attend the exercise of this jurisdiction, that does not equally apply in cases where the jurisdiction is an inferior one.   What is meant by the absence of all jurisdiction is illustrated in the case of Bradley v. Fisher, 13 Wall. 352, 20 L. Ed. 646, where the court say:

"But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the

jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority."

In this case, so far as appears, there was jurisdiction under the ordinance of the city to collect license taxes, and that was what was done, and what is complained of in the present case; but in the enforcement of that ordinance the recorder and chief of police erred in the conclusion that the plaintiff was within its provisions, and for this erroneous judgment they are sought to be held liable in damages. Now, can it be said to be clearly apparent that there is no jurisdiction in such case? Technically construed, it does not appear from the complaint that the plaintiff was soliciting orders for goods manufactured in another state. It is immaterial, except for the purposes of jurisdiction in this court, that the plaintiff was a citizen of the state of California. The material thing with reference to this liability is the soliciting of orders for goods manufactured out of the state, and this does not appear. But, for the purposes of this demurrer, I will assume that it does appear. Now, upon such a state of facts, might not the recorder issue a warrant for the arrest of the plaintiff, and might not the chief of police execute such warrant, in ignorance of the fact that the business in which the plaintiff was engaged was interstate business? And the conclusion might reasonably be reached by the officers charged with the enforcement of this ordinance that even such business was not exempt from the payment of a license tax. Such was the opinion of the chief justice and two of his associates in the case of Robbins v. District. If there was convincing reason for such a conclusion on the part of these learned men, why should a recorder and chief of police of the city of Oregon City be held liable in a civil action in damages for taking the same view? It is clearly not a case where there is a clear absence of jurisdiction of the subject-matter, since, as already stated, the city is authorized to collect license tax from persons soliciting business, and, at the most, it is only in the case of persons soliciting for the sale of merchandise outside of the state that the party would be exempt from liability to pay the license. It seems very clear that the officers, in the execution of this ordinance, are within the rule of exemption from civil liability. They are certainly within the reason of the rule, and, so being, are exempt.

The allegation that the officers of the city acted falsely and maliciously in what was done is immaterial. It is held in Bradley v. Fisher, supra, that the exemption of judges from civil liability cannot be affected by the motives with which their judicial acts are performed:

"If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection

essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action."

For reasons affecting the public interest, the responsibility of a judge for malice or corruption in office is to the public, through impeachment or other judicial proceeding, involving, among other penalties, a judgment of removal from office.

In the case of Trescott v. City of Waterloo (C. C.) 26 Fed. 592,—a case like this,—it was held that an action could not be maintained against a municipal corporation for false imprisonment, where the party, on conviction, served out his fine in prison; and, as one of the grounds for its decision, the court says:

"Not questioning that the ordinance adopted by the city of Waterloo comes within the ruling thus made, and is therefore void, counsel have discussed the question whether the city can be held liable for damages to the plaintiff, under the state of facts alleged in the petition. It will be borne in mind that the plaintiff could, by proper action on his part, have defeated the assessment of a fine against him for selling without a license. If the decision in the police court was adverse to him in this particular, he could, by appeal, have carried the case to a higher court, and thereby have caused the reversal of the judgment assessing a fine against him. Had he paid the fine under protest, he might have recovered the same in a proper action. He did not pursue either of these courses. Having undertaken to peddle goods without a license, and having been arrested for a violation of the ordinance, he suffered a fine to be entered against him, and, rather than appeal or pay the fine in money, he discharged the fine by suffering imprisonment under the provisions of the state statute."

In this case the plaintiff could have relieved himself from the damages which he has sustained by the payment of the license tax, in which case he would have had his remedy against the city to recover the money thus paid, without serious injury or damage to himself; and so he ought not to be permitted to make use of imprisonment, which has, in a sense, been voluntarily submitted to by him, for the purpose of recovering damages. The demurrer is sustained.