## MacDONALD v. COMMISSIONER OF INTERNAL REVENUE.
### No. 232.

Circuit Court of Appeals, Second Circuit.
Argued March 8, 1935.

Decided April 1, 1935.

514

Frederick Schwertner, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This petition seeks a review of income taxes assessed for the years 1928 and 1929. Appellant, owner of all the common stock, 1,500 shares, of the Lockwood Trade Journal Company, Inc., contracted to purchase 1,425 shares of the preferred stock of that company, on July 10, 1928. He paid therefor $62,700 in cash, and executed and delivered Series A notes for a total sum of $128,250; a Series B note for $80,000; and Series C notes for $51,300, as agreed. A new certificate for the 1,425 shares of preferred stock was issued to him, which he indorsed in blank and deposited with a bank, to be held in escrow, pending final payment for the stock. The Series A notes were paid, except the last three, as they fell due; the Series B note was extended to January 1, 1940; and the Series C notes were paid.

In 1928 and 1929, the petitioner entered into contracts to "sell" some of the 1,425 shares thus purchased to six individuals, under similar contracts, which recited that the purchase price of the stock was the total of the A and B Series notes, plus the cash, and that the Series C notes were given in lieu of interest on the Series A notes referred to in the contract of purchase. The price per share of this stock to the petitioner was $266.14. The contract between the petitioner and his "purchasers" referred to the "sales" of the shares, and that the petitioner "hereby sells, assigns and transfers to the purchaser" a certain number of shares.

The Board of Tax Appeals held that the petitioner did not sell these 463⅛ shares of preferred stock to the six alleged purchasers and that he could not deduct the losses he says he had sustained. Moreover, the Board held that the Series C notes did not constitute deductible interest payments.

The contracts of sale, read as a whole, disclose that the stock was to remain in the petitioner's name, delivery to await full performance of petitioner's own contract of purchase; that he was entitled to all the dividends of the stock "sold" by him; that he was to have the voting rights and the right to execute all legal documents in connection with the stock. He was given unlimited discretion to sell the stock to whomsoever, whenever, and at such terms as he chose; in the event of a sale by him, he agreed to pay the "purchaser" the amount of money they had advanced to him with interest, or a proportionate percentage of the proceeds of sale, whichever amount was the greater; if he became apprehensive that the payments required by petitioner's contract of purchase would not be made by him, his "purchasers" were given the right, upon notice from the petitioner, to advance moneys to prevent default, in which event they would be entitled to a pro rata share of the remaining 1,425 shares of stock.

The contracts speak of a joint venture with respective rights to participate therein to the extent of their several and proportionate rights. While mere postponement of delivery does not mean that an actual sale has not been consummated [Hoffman v. Commissioner, 71 F.(2d) 929 (C. C. A. 2); Hammer v. United States, 249 F. 336 (C. C. A. 2)], the contracts and the arrangement here provided for in the "sale" to petitioner's "purchasers" disclose that there was no sale intended by the petitioner. To succeed in deducting a loss, the petitioner must show a sale was intended and established as having been consummated. Delay in the payment of purchase price does not negative the present sale if the parties agreed to a delay in payment. But the determining factor is: Was it the intention of the parties in the "sale" of these particular shares, to vest in the "purchasers" an immediate and absolute title thereto or to effect a present transfer of the property in the stock certificates? We think the circumstances here considered in connection with the contracts disclosed no such intention. It is essential that the passage of title be an accomplished fact; the seller's right of property must pass to the purchaser. A sale has a precise legal import both at law and in equity. "It means at all times, a contract between parties, to give and to pass rights of property for money. * * *" Williamson v. Berry, 8 How. 495, 544, 12 L. Ed. 1170. The most important rights of the preferred stock were retained by this petitioner, and where such rights are found, there is where the title resides. It appears that the "purchasers" from the petitioner were concerned with the possibility of probable profits to be obtained from a sale of the corporation by the petitioner. The transaction indicates a joint

venture in which the "purchasers" would share in the profits of a sale in return for their lending the necessary financial aid pending the fruition of the venture. In the event of a sale, the least the "purchasers" could realize was a 6 per cent. profit on their investment. They might lose if there never were a sale, but they could not lose if a sale actually took place. It was not the ownership of the stock which interested them; it was its sale by petitioner at what they hoped and expected would be a profit. Therefore, it can be truly said that it was not shares of stock which the "purchasers" bought, but the right to share proportionately in the expected profits, and neither legal nor equitable title passed at that time to the "purchasers."

 Petitioner's contract of purchase recited that the petitioner "agrees to pay for said preferred stock the sum of Three Hundred and twenty-two thousand two hundred and fifty Dollars ($322,250.00) * * *"—not $270,950. In no part of the contract is there a statement that the purchase price agreed upon included interest on any amount. But petitioner contends that the Series C notes, amounting to $51,300, represented interest and that this sum must be deducted from $322,250 to find the actual purchase price. There was evidence received which indicated that the parties to the contract regarded the Series C notes as interest, but ordinarily such evidence may not be used to change a clear and unambiguous term of a contract. The contract refers to the Series C notes as part of the purchase price, and there is nothing in the contract indicating that they were given for anything other than the payment of the purchase price. In Robbins v. Rollins, 127 U. S. 622, 8 S. Ct. 1339, 1345, 32 L. Ed. 292, the court said: "We cannot interpolate such a stipulation. It is not implied by anything that appears on the face of the contract. * * *" And in Graham v. Business Men's Assurance Co. of America (C. C. A.) 43 F.(2d) 673, 674, it was said: "Where language used by the parties is clear, courts are not justified in ignoring it, however plausible the reasons advanced." "It is true that in cases of ambiguity in contracts, * * * courts will lean towards the presumed intention of the parties, * * * and will so construe such contract * * * as to effectuate such intention; but where the language is clear and explicit there is no call for construction, and this principle does not apply. Parties are presumed to know the force and effect of the language in which they have chosen to embody their contracts, and to refuse to give effect to such language might result in artfully misleading others who had relied upon the words being used in their ordinary sense. In construing contracts, words are to receive their plain and literal meaning, even though the intention of the party drawing the contract may have been different from that expressed." Calderon v. Atlas Steamship Co., 170 U. S. 272, 18 S. Ct. 588, 591, 42 L. Ed. 1033.

 The purchase price is unambiguously recited to be $322,250. To include interest in that sum would do violence to the terms of the contract. Failure to provide for interest payments in installment contracts precludes a finding that part of the recited purchase price includes interest. Henrietta Mills, Inc., v. Commissioner, 52 F.(2d) 931 (C. C. A. 4); Daniel Bros. Co. v. Commissioner, 28 F.(2d) 761 (C. C. A. 5).

Decision affirmed.