### STEVENS v. O'NEILL.

(Supreme Court, Appellate Division, First Department. May 11, 1900.)

1. FALSE IMPRISONMENT—EVIDENCE—THREATS.

In an action for false imprisonment, plaintiff's evidence showed that
she went to the jewelry counter of defendant's store, and asked to be
shown some watches; that, after plaintiff had examined 'some, the sales
girl counted them, and said there was one watch missing. The girl sent
for the floor walker and a detective, who told plaintiff that she would
have to be searched. The detective sent for a man, and they took plain-
tiff between them into a room, where she was searched. Defendant con-
tended that plaintiff asked to be searched, that she might be exonerated,
and that no restraint was exercised against her. *Held* to warrant sub-
mission of the question whether restraint was exercised, since it was not
necessary that plaintiff should have actually resisted, being threatened and
surrounded by defendant's employés.

2. SAME—INSTRUCTIONS.

Where plaintiff was accused of having stolen a watch from defendant's
store, and was compelled to submit to a search in the store, in an action
for false imprisonment a charge that plaintiff must prove absence of
probable cause for the arrest was no ground for a new trial on defendant's
motion, since the charge placed an additional burden on plaintiff.

3. SAME.

Where plaintiff was detained in defendant's store and searched on suspi-
cion of having stolen a watch, in an action for false imprisonment a charge
that false imprisonment was unlawful restraint of the person,· with or
without process of law, was without prejudice to defendant, since there
was no question of process in the case.

4. SAME—MALICE.

Where plaintiff was detained in defendant's store and searched on suspi-
cion of having stolen a watch, and she thereafter sued for false imprison-
ment, it was proper to submit the question of malice to the jury, since
it might be inferred from the grossness of the defendant's acts.

5. SAME.

Where plaintiff, while examining watches in defendant's store, was told
that a watch had disappeared since they were. shown her, and that she
must be searched, and she submitted (being surrounded by defendant's
employés), the court properly refused to charge that if the jury believed,
as testified by certain witnesses, that plaintiff was at any moment at lib-
erty to leave the store, they must find for defendant.

6. SAME—PUNITIVE DAMAGES.

Where, in action for false imprisonment, it appeared that plaintiff,
while examining watches in defendant's store, was told by the sales girl
that a watch had disappeared since they were shown plaintiff, and a de-
tective was called, who said that plaintiff must be searched, and she (being
surrounded by defendant's employés) submitted to a search, it was proper
to award punitive damages.

Appeal from trial term, New York county.

Action by Louise Vergnes Stevens against Hugh O'Neill. Judgment in favor of plaintiff, and an order denying a motion for a new trial. Defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, INGRAHAM, and McLAUGHLIN, JJ.

E. W. S. Johnston, for appellant.

Gilbert R. Hawes, for respondent.

VAN BRUNT, P. J. This action was brought to recover damages for an alleged false imprisonment. The answer was, in effect, a general denial. The questions raised upon this appeal may be embraced within two classes: First, whether there was evidence enough to justify the jury in finding that there was any false imprisonment; and, second, whether there were any errors committed in the charge of the learned justice who tried the case.

It is claimed upon the part of the appellant that there was no evidence that any restraint was exercised by the defendant or his employés, as against the plaintiff, and that her submission to search was entirely voluntary upon her part. It appears from the evidence of the plaintiff: That she visited the store of the defendant, in the city of New York, on the 15th of December, 1897. That she went to the jewelry counter, and asked the sales girl to show her some watches. The girl showed her some which were very bright in color, and the plaintiff then asked if she had not some more subdued in character, and the girl said, "No." "Then she counted the watches. She said, 'There were so many in the case when I showed them to you. Now, she says, there is one missing.' 'Well,' I said, 'probably you have sold the watch;' never thinking she thought I was the thief. Then she sent for the floor walker, and then he sent for the detective, and she said I would have to be searched." The plaintiff repeated the testimony that, when the woman detective came up, she said: "You will have to be searched." That then the detective sent for a man, and they took the plaintiff through the store, between this man and the detective, to the elevator, and went upstairs into a small room, where she was searched. It is claimed upon the part of the appellant that the plaintiff asked to be searched upon the supposition that she was suspected of being the thief, and that she was willing and submitted to search for the purpose of clearing herself from suspicion, and that no restraint whatever was exercised against her by any of the employés of the defendant. It seems to us, when we consider the situation of the plaintiff (that she was in the store of the defendant, surrounded by persons who were employed by the defendant to detect crime, substantially accused of being a thief, and with the statement made to her, "You will have to be searched"), that this was the exercise of such a dominion over her as that the jury might very properly find that restraint was exercised, and that the subsequent proceedings were simply carrying out the threat that they would search her. Under such circumstances the plaintiff certainly was not required to offer physical resistance to this unjustifiable proceeding against her. The jury having resolved this question in her favor, there seems to be no ground what-

ever for this court to interfere. The authority of the employés of the defendant is established beyond peradventure by the testimony of the defendant himself. These were the agencies employed by him for the protection of his property, and these people, in the proceedings taken by them, were acting clearly within the scope of the authority which had been conferred upon them.

The next question we are called upon to determine is whether the learned judge, in his charge, gave any erroneous directions to the jury, or refused any request to which the defendant was entitled. The exception of the defendant to that portion of the charge wherein it is stated that the plaintiff must prove that there was an absence of probable cause for arrest is clearly no ground for a new trial, because, if the court was in error, as it probably was, in the proposition enunciated, it was placing an additional burden upon the plaintiff, and in no way operated injuriously to the defendant. Equally immaterial was the exception to that part of the charge which stated that false imprisonment is the unlawful restraint of a person, contrary to his will, either with or without process of law, and that it comprises two elements: First, the detention of the person; and, second, the unlawfulness of such detention. There was no question of process in this case. It was a question of detention, and of the unlawfulness of the detention, and that only; and the proposition excepted to was entirely immaterial, and had no relation to the facts of the case. There was also an exception to the submission to the jury of any question of malice in the case. The proposition of the court in that regard was entirely correct. The law imputes malice to an unlawful act. There is undoubtedly a difference between malice which the law infers from the act itself, and malice which is the product of a proved mental operation. The court had the right to submit the question of malice in this case. From the very grossness of the act itself, malice may be inferred. Here, without the slightest evidence that this plaintiff was in any way connected with the disappearance of the watch in question, it is proclaimed to her that she must be searched,—in other words, she will have to submit to a search; and, surrounded as she was by the servants of the defendant, possessing authority to act, she submits. It is clear that from an act of this kind the jury might infer legal malice. There is also an exception to that part of the charge in which the court said that the defendant might be liable for acts of injury or insult if they occurred in the course of the employment. It seems to be hardly necessary to discuss an exception of this character.

We now come to the requests to charge. There are a large number of these requests, which the court refused to charge further than he had already charged. Upon an examination of these requests, it will be seen that they are all embraced within one proposition, namely, that the plaintiff cannot recover unless she proves that she was detained. Various requests were made,—among them, "that the plaintiff had sworn that she went willingly to the room where she claims she was searched." In regard to this proposition, it is apparent from the evidence that it was a question for the jury to

determine whether the plaintiff was detained or not. The jury were not bound to find that she went willingly to the room to be searched, simply because she did not actually resist. She was surrounded by superior force, to contend against which was beyond her physical powers, and she had been told what she had to do, and she surrendered unconditionally; and that is all there is as to her submission and willingness to be searched. The jury found such to be the facts, as they probably were. Under these circumstances, the court was justified in refusing to charge such a request. The court had expressly charged that the claim against the defendant was for false arrest and imprisonment, and that the first question to be decided by the jury was whether there was an arrest. Then the court defines what false imprisonment is, namely, unlawful restraint of a person contrary to his will, and further charges the jury that if a person insist upon proving her innocence of an accusation, expressed or implied, by exhibiting the contents of her pockets or her satchel, and goes voluntarily to a room for that purpose, the mere act of accompanying her there for such purpose by one or more persons would not constitute either arrest or imprisonment. Here was clearly placed before the jury the fact that there must be a detention against the will of the plaintiff in order that there might be a recovery. Under these circumstances, it seems to me the court was entirely justified in refusing to charge further upon such a proposition. The exception to the refusal to charge that if the jury believed, as testified to by Miss Cantwell, by Mr. Carpenter, the officer, Hannon, and the other witnesses for the defendant, that she was at perfect liberty to leave the store at any moment, they must find a verdict for the defendant, is clearly untenable. The other witnesses of the defendant did not swear to that effect, and it is a little doubtful whether the construction of the evidence given by all the witnesses named is of the character described in the proposition.

It is further urged that there was no ground for awarding punitive damages; in other words, that there was no express malice proved, and therefore no foundation for punitive damages. It will be seen, when we consider the nature of punitive damages, that the case falls within the rule permitting them to be awarded. Punitive damages are given, not only as a punishment to the defendant for a wrongful act, but also as a warning to others. Although there was no evidence of any express malice against this plaintiff individually, the act was done in pursuance of a system which had been adopted in that store; and, if this system was such as to place an innocent customer in the position in which the plaintiff's evidence shows that she was placed, the jury had the right to say that the results of this system were of such a character as to require rebuke by way of punitive damages, in order that innocent people should not be placed in the position which this plaintiff was placed without any fault upon her part.

Judgment and order should be affirmed, with costs. All concur.