(48 South. 141.)

No. 17,144.

CROSSETT v. CAMPBELL et al.

(Dec. 14, 1908. Rehearing Denied Jan. 18, 1909.)

FALSE IMPRISONMENT (§ 6*) — WHAT CONSTITUTES.

Plaintiff entered upon grounds which were lawfully in possession of schoolboys, who were giving a free picnic, and who had given notice, in advance, that later in the day a game of baseball would be played, to which a trifling admission fee would be charged. When the game was about to begin he refused, though repeatedly requested so to do, to pay the fee or go out, and he was thereupon taken by the arm by a citizen—one of the assembled guests or patrons—acting in behalf of the boys, though without special authority, and led in the direction of the gate, always with the privilege of paying and staying, and the alternative of not paying and going. Before reaching the gate, he paid the fee, and thereafter stayed and witnessed the game.

Held, that the restraint imposed was not total, and did not render it impossible for plaintiff to stay where he was or otherwise control his movements; that, being at all times able to release himself on payment of the fee, for which, if he stayed, he was morally and legally bound, the restraint imposed on him, merely as a means of his ejection, until he elected to pay, was the result of his voluntary persistence in an unlawful act, did not deprive him of "free egress,"

and affords no ground for an action in damages for false imprisonment.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 3; Dec. Dig. § 6.*]

(Syllabus by the Court.)

Appeal from Fifth Judicial District Court, Parish of Winn; George Wear, Judge.

Action by Fenner B. Crossett against J. W. Campbell and others. Judgment for defendants and plaintiff appeals. Affirmed.

John Henry Mathews, for appellant. Casimir Moss, for appellees.

Statement of the Case.

MONROE, J. This is an action for damages in which plaintiff appears before this court as appellant from a judgment rejecting his demands.

He states his supposed cause of action by alleging that:

"Petitioner was in company with his wife and friends on an open lot, in the village of Dodson, * * * behaving himself, in every respect, as a good citizen should do; * * * that, while so situated, J. W. Campbell, the marshal of the town, * * * and W. C. Johnson, acting in conjunction with and aiding and assisting each other, did, with force and arms, unlawfully arrest, detain, and imprison your petitioner, by seizing hold of your petitioner's body and drawing a deadly weapon on your petitioner, and, in this manner, dragged your petitioner through a large assembly of people congregated there, and did in this manner forcibly detain petitioner, against his will, for some considerable time; * * * that there never did exist any warrant or legal process whatever authorizing either the said J. W. Campbell or the said W. C. Johnson to take petitioner in their custody or to detain or imprison him; * * * that said acts furnish an instance of false imprisonment for which they should be held liable in solido; * * * that, on account of said false imprisonment, he has suffered damages * * * in the sum of $3,000; and he prays judgment against the defendants in solido."

An exception of no cause of action was filed and overruled, and, defendant having answered, the case was tried on its merits, developing the following facts: The boys of the Dodson High School, having decided to celebrate their commencement by giving a public picnic, to be followed in the afternoon

by a game of baseball, secured from the Tremont Lumber Company the use of certain ground, owned by the latter, from which they removed the stumps and other obstructions, and which they inclosed by encircling it with a rope and a wire. No charge was made for participation in the picnic, but, in order to provide balls and bats, and to aid in paying the expenses of the visiting, Winnfield, High School team, the Dodson boys found it necessary to charge a fee of 25 cents to those who chose to remain, or to come, after dinner, within the inclosure and witness the baseball game, and notice of their intention in that respect was published in the Dodson paper, and was also served on many of the citizens by means of postal cards, plaintiff being one of those to whom such a card was mailed. He, however, seems to have conceived the idea that the charge was an imposition, and, before going to the grounds, announced his determination not to pay it. He says in his testimony:

"About 2 o'clock the professor got up on a stump and announced for everybody to go down to the gate so that they could collect their 25 cents. Most of the ladies went, and a good lot of men. Some of them stood around and did not go."

Plaintiff's wife was one of the ladies who "went." She gave the gate keeper 10 cents, and told him she would give him the remaining 15 cents (to make up the 25 cents for her admission) before she left the grounds, and her assurance was accepted, without discussion, as satisfactory. Plaintiff, though he had in his pocket more than enough money to pay the charge, was one of those "who stood around and did not go." In that situation, appeals were made by the boys to plaintiff, and to those who assumed a like position, either to pay or to go out, and most of them did one thing or the other. Plaintiff did neither. One of the boys, being asked, "What did you propose to do if a person came on the ground that day and did not want to pay a fee," replied, "We did not think that any one would want to run over us in that way. * * * Didn't think very much about that." Campbell, the marshal, had had a talk with the mayor, in which the latter had expressed the opinion that no one could be arrested or otherwise dealt with under the town ordinances for refusing to pay the admission fee, and the marshal, acting on that opinion, contented himself with merely appealing to the recalcitrants either to pay or go out. He says he explained to plaintiff and others why the charge was made, and told them, "I believe I would pay or just go out, and not create any contrariness." He did nothing more. Johnson, a citizen of the town and a friend of the boys, seems rather to have urged the matter upon the few who persisted in holding out, and, it being said by some of them, "Everybody has gone out except that Dodson fellow [referring to plaintiff], and if he will go out we will go out too," he approached plaintiff, who had already been appealed to several times, and, at this point, there is some variance in the testimony. One or two witnesses say that Johnson asked plaintiff whether he had paid; that plaintiff replied that he had not; that Johnson then requested him to go to the gate, and took him by the arm; that plaintiff resisted, slightly, at first, and then walked in the direction of the gate, all the witnesses agreeing that he settled the matter by paying before reaching the gate. Plaintiff says that Johnson asked if he had been to the gate; that he replied, "No, my wife has made arrangement"; that Johnson then said, "Consider yourself under arrest for resisting an officer," and grabbed him by the arm; that he "finally got loose, * * * was not trying very hard, and, when he did, Johnson grabbed him again," and "threw his hand back like he was going to pull a gun"; that he (plaintiff) said, "You can't arrest me, for I am not bothering you"; that Johnson said, "Pay up, then, pay up," and that he went with Johnson for a distance of some 75 yards,

when he paid up and was released. Johnson says: "I said, 'Mr. Crossett, everybody has gone out but you, and it don't look nice for you to stay;'" and I said, "If I was you, I would go out, and act nice about it," and he said, "My wife paid," and I said, "Did she pay for you?" and I asked Mrs. Crossett did she pay for him, and she said, "No;" and I said, "Crossett, you will have to go out and (or) pay," and I took him by the right arm and started, and he said he would go, and then he stopped and asked me if I was going to take him to the calaboose, and I told him, "No." We went to the other side of the cold drink stand, which I reckon was 20 or 30 steps—I guess it took about 20 or 30 seconds—and he said, "Hold on, I will pay you my quarter, and I will prosecute you." Plaintiff thereupon produced a dollar, from which the gate keeper, who came up at the moment, gave him 75 cents in change, and the matter ended, plaintiff returning to his wife and remaining, without further disturbance, to witness the game. A witness by the name of Dean says that Johnson had a pistol in the rear pocket of his trousers and partly drew it out at one time, but it is shown beyond question that he was in his shirt sleeves and was wearing linen trousers, and several witnesses testify that they saw no pistol and that they could not very well have helped seeing it if he had had one. Johnson himself swears that he had no pistol.

## Opinion.

It will be observed from the foregoing statement of the facts of the case, as disclosed by the evidence, that instead, as he alleges, of being on "an open lot," plaintiff, at the time of the incident out of which this suit arises, was upon a lot, the use and enjoyment of which had been granted by the owner to the Dodson High School Baseball Team, which the members of that team had cleared of stumps and other obstructions and had inclosed, or partially inclosed, with a wire and rope for their own purposes, and of which they were in full possession; and that, instead of his "behaving himself, in every respect, as a good citizen should do," he was engaged in a most unreasonable and wrongheaded interference with a lot of schoolboys and other persons who were exercising, innocently, their legal right to amuse and be amused, upon property over which, for all the purposes of this case, they had absolute control. It will also be observed that, whereas plaintiff alleges that "on account of said false imprisonment" he suffered the damages for which he prays judgment, the facts are that he was given the alternative of staying where he was upon complying with a condition rightfully imposed, or of removing himself from premises where otherwise he was an intruder and a trespasser, and that, upon his refusal to do either the one thing or the other, he was in course—not of being imprisoned upon but—of being ejected from, the premises (with the privilege reserved to him of remaining where he was, on complying with the required condition, or of going elsewhere, without so complying, as he pleased), when he concluded to comply with the condition, and the trouble ended. There was, therefore, never an instant of time during which his release from the restraint imposed upon him was not entirely within his own control, and might not have been accomplished by his paying the trifling amount of money demanded of him, and he was never restrained from doing anything, save the unlawful thing of remaining upon the boys' playground, against their wishes, in violation of their rights, and to their disturbance and the disturbance of their assembled guests. Our law (Rev. St. § 796) imposes a penalty for "false imprisoning," but does not define the offense. It is elsewhere defined as follows:

"False imprisonment is the unlawful and total restraint of the liberty of the person. * * *"

The right violated by this tort is—

"freedom of locomotion. It belongs, historically, to the class of rights known as simple or primary rights (inaccurately called absolute rights), as distinguished from secondary rights, or rights not to be harmed. It is a right in rem; it is available against the community at large. The theory of the law is that one interferes with the freedom of locomotion of the other at his peril. * * * The right of freedom of locomotion is violated when one is wrongfully detained against his will, or is in any way deprived, as distinguished from obstructed or subjected to inconvenience, of his right to come, or go, or stay, when and where, he wishes. Some conduct imposing restraint or detention is essential, but any conduct resulting therein is sufficient. It is the unlawful interference with the wish or desire of plaintiff which the law seeks to compensate. Free egress must therefore be impossible; the restraint must be total." Cyc. vol. 19, pp. 319, 322.

A note to the paragraph last above quoted reads:

"If plaintiff is free to go where he wants, he cannot sustain an action of false imprisonment; if he is prevented from going where he may have a right to go, a mere partial obstruction to his will may be the basis of some other form of action, but not of the one here under consideration. Bird v. Jones, 7 Q. B. 742; * * * Stevens v. O'Neill, 51 App. Div. 364, 64 N. Y. Supp. 663.

*     *     *     *     /     *     *

"There is no legal wrong unless the detention was involuntary." Cyc. vol. 19, p 323.

A note to this paragraph reads:

"One who submits to arrest and imprisonment rather than pay a small license fee, illegally exacted, but which he might have recovered back, without serious injury or damage, has no cause of action. Cottam v. Oregon City (C. C.) 98 Fed. 570."

And, again, we find that it has been held that:

"When the contest is for possession of personal property, and there is no intent to detain the person, false imprisonment is not made out. McClure v. State, 26 Tex. App. 102, 9 S. W. 353."

Applying the definition and interpretation thus given to the case at bar, it will be no-

ticed that free egress from the baseball grounds was at all times possible to the plaintiff, and that Johnson's purpose was, not to imprison him in the grounds, but to eject him from them, though the privilege was accorded him of remaining there on his complying with a reasonable and lawful condition, and that it was entirely and at all times within his power to release himself from the restraint incidental to his proposed ejection by the payment of the admission fee, for which, if he stayed, he was morally and legally bound. Such restraint was therefore of his own doing, and was not involuntary.

It is said that the defendant, Johnson, should be held liable in any event, because, disclaiming, as he does, authority either from the marshal or the boys, he was without right, as an individual, to interfere in the matter. It might, perhaps, be answered that an individual has the right to interfere where a breach of the peace or a misdemeanor is committed, or threatened, in his presence, and that, apart from the fact that plaintiff was unlawfully disturbing the boys in their enjoyment of the premises in question—a course of conduct the tendency of which was to provoke acts of violence—he was, by his unauthorized presence, disturbing and invading the rights of a peaceful assemblage of which Johnson was a member, in violation of a statute which denounces such disturbance as an offense punishable by fine and imprisonment. Rev. St. § 929.

We, however, prefer to base the decision upon the ground first stated, to wit, that the restraint of which plaintiff complains was voluntary, in that it always rested with him to terminate it by desisting from the doing of an unlawful act, and that "free egress" was always open to him.

Judgment affirmed.