LOTTINGER, Judge.
This is a suit for damages resulting from the alleged wrongful detention and questioning of plaintiff, Margaret Pace, for shoplifting by employees of the defendant, Winn-Dixie of Louisiana, Inc. From a judgment in favor of the defendant, plaintiffs have appealed.
On December 28, 1971, between 5:00 and 6:00 in the afternoon, Mrs. Margaret Pace, accompanied by her 18 month old grandchild, entered the Winn-Dixie Store in Sli-dell, Louisiana, to shop. As she entered the store, she obtained a shopping cart, placed *857 her grandchild in the shopping cart and proceeded with her shopping. Upon passing the drug counter, she realized she needed a pack of Stanback and aspirin, and upon retrieving them from the counter rather than placing them in the shopping cart, she held them in her hand so as not to allow the grandchild the opportunity of picking them up. Upon proceeding further down the aisle, she realized the inconvenience of attempting to hold these two items in her hand, and dropped them in a tote bag or purse for safekeeping. After completing her shopping, she proceeded to the check out counter whereupon she paid for her merchandise with a personalized check which showed her mailing address as well as her telephone number. Mrs. Pace had check cashing privileges at the store, and carried a card issued by the store identifying her as having check cashing privileges. However, upon arriving at her house, and unpacking her groceries, she realized that she had not paid for the Stanback and aspirin, since they had been separated from the other items, and immediately telephoned the Winn-Dixie Store informing them of her error, and determining if they would remain open so that she could return to pay for the merchandise.
While Mrs. Pace was in the store shopping she was observed by two store employees, Allen Creamer, Assistant Manager, and James Babin, Meat Market Manager, placing two items in her purse or tote bag. They continued to watch and observed that she did not pay for these items. Babin testified that it was possible he helped Mrs. Pace to her automobile with her groceries. Her license number was taken down as she drove off, even though Creamer knew who she was, and that she had check cashing privileges at the store. Both employees testified that the reason she was not approached prior to her driving off was because they did not want to embarrass her in front of the small child.
Mrs. Pace’s telephone conversation with the check out girl, Bonnie Hingle, was conveyed to either Creamer or Babin prior to Mrs. Pace’s return. Mrs. Pace testified that. upon her return to the store, she went immediately to the check out counter, informed the girl in attendance that she was the person who had called about the two items. She had paid for the items when the check out attendant was instructed to cancel the sale and return the money. Mr. Creamer testified that when Mrs. Pace entered the store, she started toward the check out counter, but upon seeing him went toward him. Regardless, Mrs. Pace was requested to accompany Mr. Creamer and Mr. Babin to the store office. The office in question is a raised area near the check out counters enclosed by a half-wall, which allowed a view of the store by the occupants of the office, and the occupants to be seen from the store area.
It is Mrs. Pace’s contention that while in this office area she was accused of shoplifting and theft and lectured on shoplifting as well as being told that she would be on record as a shoplifter, subject to search whenever she was in the store, and that this information would be given to other merchants in St. Tammany Parish. She further alleges that she was informed it was necessary for her to sign a form furnished by the store prior to her being released, and if she refused to sign, the police would be called.
Even though she was allowed to insert the emphasized language, the form reads as' follows:

*858

She was in the office about 15 minutes, and upon signing the form was allowed to pay for the merchandise and leave.
Though the testimony as to what happened when Mrs. Pace first entered the store on her return is in conflict, in oral argument counsel for defendant admits that someone could have said “cancel the sale.” Creamer denies using the word shoplifting or stealing in discussing the situation with Mrs. Pace, though he did admit explaining to her the problems the store was having with shoplifting and could have conveyed to Mrs. Pace the idea that she was guilty of shoplifting. He further admitted that the form would be filled out and the customer requested to sign it even though a mistake had been made by the customer.
Mr. Babin denied that anyone accused Mrs. Pace of being a shoplifter, that it would be reported to the police, that her purse would be searched whenever she came back to the store, or that merchants in the Slidell area would be furnished with this information. However, he did admit that she was informed that when someone conceals merchandise and leaves the premises without paying for it, that it is considered shoplifting for which they could be arrested. He candidly admitted that it is possible that she was told that the form had to be filled out before she could leave. He further admitted that the purpose of taking her to the office was to have the form filled out, and the purpose of the form was to admit that she had shoplifted. On examination by the Trial Judge, Mr. Babin admitted that the word “taken” as found in the form meant “stolen”.
The Trial Judge in brief written reasons for judgment stated:
“This Court’s examination of the testimony leads to the conclusion that the plaintiff did in fact leave the defendant’s store with a couple of items which she did not pay for. She called the store by phone from home and advised she was returning to pay for the two items.
“She returned to the store, and there was a brief period where she was in the managers booth in front of the store where she signed the form and paid for the items. “The testimony fails to convince this Court that there was any wrongful de *859 tention or other wrongful conduct on the part of the store employee which are sufficient to grant relief to the plaintiff. “Accordingly, the plaintiff’s suit will be dismissed at her cost.”
As we view this matter, the issue before this Court is whether the defendant had “reasonable cause to believe that [Mrs. Pace had] committed theft of goods held for sale” as provided by LSA-C.Cr.P. art. 215 which provides:
“A peace officer, merchant, or a specifically authorized employee of a merchant, may use reasonable force to detain a person for questioning on the merchant’s premises, for a length of time not to exceed sixty minutes, when he has reasonable cause to believe that the person has committed theft of goods held for sale by the merchant, regardless of the actual value of the goods. The detention shall not constitute an arrest.
“A peace officer may, without a warrant, arrest a person when he has reasonable ground to believe the person has committed theft of goods held for sale by a merchant, regardless of the actual value of the goods. A complaint made to a peace officer by a merchant or a merchant’s employee shall constitute reasonable cause for the officer making the arrest.”
Under the facts as above found, and in particular, that Mrs. Pace was known to be a regular customer of the Winn-Dixie Store, that she was known to have check cashing privileges at the store, and that she telephoned the Winn-Dixie Store to inform them of the mistake she had made, we do not believe that the store employees from the point when Mrs. Pace phoned had reasonable cause to believe that she had committed theft. We do not hold that prior to the point that Mrs. Pace telephoned the store to inform them of her mistake that reasonable cause might not have existed, but taking all of the attending circumstances into consideration, we are firmly of the opinion that reasonable cause was lacking.
Further, we are of the opinion that a detention of Mrs. Pace took place. Even though she voluntarily returned to the store to pay for merchandise she had mistakenly removed, she was requested upon her arrival to accompany the two employees to the office area, and informed that she could not leave until the security form was filled out. At this point, she could have either left the store, thus giving the impression that she had done something wrong, or she could comply with the request to accompany the employees to the office area and furnish the information necessary for the form. Therefore, she was left with no true freedom of choice, for to maintain her honesty and truthfulness, she was required to remain at the store. Thus, a restraint was effectively imposed. Clark v. I. H. Rubenstein, Inc., 326 So.2d 497 (La.1976), rehearing denied (1976).
LSA-C.Cr.P. art. 215 only allows for the detention of a person suspected of shoplifting for questioning, it does not grant any authority or immunity from liability for forcing or coercing an individual to sign any statement or statements which lead to the conclusion that they were guilty of shoplifting. Though the above quoted form is not entitled a confession, nor does the word confession or theft appear therein, it is quite obvious from the facts that the intended purpose of the form was to have the suspected customer admit to shoplifting. This the defendant cannot do.
We, therefore, find that the Trial Judge was in error in holding that there was no wrongful detention or other wrongful conduct on the part of the store employees, and therefore, reverse and find in favor of the plaintiffs.
On December 29, 1971, Mrs. Pace consulted Dr. Don Carlos Rudeen, a specialist in family practice. At this time she was markedly aggravated, depressed, and crying over the incident on the previous evening. Dr. Rudeen instructed her to begin retaking her tranquilizers which had been prescribed the year before in connection with adrenalin cortex insufficiency. The following day she was inconsolable and was hospitalized for acute anxiety with depression reaction, *860 which in common terms is a nervous breakdown. She was released from the hospital on January 4, 1972. While in the hospital, treatment was administered with tranquilizers and anti-depressants. Dr. Rudeen saw her again on February 8, 1972, when she broke down and cried in his office, stating that she had attempted to go shopping but just could not bear to go into a store. Psychiatric treatment was suggested at this time, and in the latter part of March, 1972, she finally agreed to see a psychiatrist. Dr. Rudeen stated that he saw her several times concerning her condition as a result of the incident.
Dr. Charles R. Smith, a psychiatrist, testified that he first saw Mrs. Pace on April 12, 1972, and diagnosed that she had a chronic personality disorder, she was fearful of shopping; and that the main emotional reactions she was exhibiting pertaining to the particular incident were those of fear. Dr. Smith considered all of her visits during the calendar year 1972, which were 11 visits, to be primarily associated with the incident at the Winn-Dixie Store. At the time that he first examined her, he found her to be depressed and anxious.
From the record it is obvious that this lady had some medical problems as well as family problems prior to the incident at the Winn-Dixie Store which caused her to be depressed, and which required medical attention. However, it is obvious that after a review of the testimony by both of the medical experts, the incident which took place at the Winn-Dixie Store on the evening of December 28, 1971, had a dramatic effect on Mrs. Pace. We feel that the incident did cause Mrs. Pace some emotional problems, not because she was embarrassed or humiliated in the presence of other individuals, because the store was almost empty when she returned, but because as expressed by Dr. Smith, she developed and lived with a fear as a result of this incident which affected her in a way that made it difficult for her to go shopping because she was afraid of repercussions of some kind as a result of the incident. Dr. Smith did testify that by the beginning of 1973, Mrs. Pace had reached the point in her treatment whereby this incident began to play a less significant role in her life. Therefore, we are of the opinion that this lady has suffered mentally and physically as a result of the wrong done her, and that an award of $5,000.00 is adequate to compensate her.
Though William Pace, as head and master of the community of acquets and gains, sued the defendant for medical expenses, the only medical expenses filed into evidence were those of Dr. Smith. This bill includes more than visits directly associated with the incident, and we therefore believe that an award in the amount of $385.00 for medical expenses is justified. There is no evidence in the record as to any future medical expenses nor the medical expenses associated with the treatment of Dr. Ru-deen. The expert witness fees of Drs. Smith and Rudeen are fixed at $150.00 each and taxed as cost.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is reversed and set aside, and IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Margaret Pace, and against the defendant, Winn-Dixie Louisiana, Inc., in the amount of $5,000.00 with legal interest thereon from date of judicial demand until paid; that there be judgment in favor of the plaintiff, William Pace, and against the defendant, Winn-Dixie Louisiana, Inc., in the amount of $385.00, with legal interest thereon from date of judicial demand until paid; that the expert witness fees of Dr. Don Carlos Rudeen and Dr. Charles R. Smith are fixed in the amount of $150.00 each and taxed as cost; and that all costs, including the cost of this appeal, be paid by the defendant-appellee.
REVERSED AND RENDERED.