492 So.2d 6 (1986)
Clifton BORNE
v.
Eunice Borne BROWN, Louise Poth Borne and Ronald Borne.
No. CA 84-1118.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Dissenting Opinion June 4, 1986.
Rehearing Denied August 20, 1986.
Writ Denied November 7, 1986.
*7 John R. Rarick, of Rarick & Brumfield, St. Francisville, for plaintiff Clifton Borne, appellant.
Guy Holdridge, Gonzales, for defendants Eunice Borne, Louise Poth Borne and Ronald Borne, appellees.
Before EDWARDS, LANIER, CRAIN, ALFORD and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
Clifton Borne devolutively appealed the decision of the District Court dismissing his suit for false imprisonment, false arrest and malicious prosecution, brought against his sister, Eunice Borne Brown, her son, Ronald Borne and Ronald's fiancee, Louise Poth. The scenario around which this litigation revolves is reminiscent of the famous Hatfields and McCoys feud, except that in the present case the feuding parties used judicial proceedings instead of guns in order to vent their spleens toward one another.
The alleged false imprisonment occurred at the property owned by Clifton and Eunice's mother, Clifton, Eunice and other siblings, the children having inherited the other undivided one-half interest in the community property from their father's intestate succession. Widow Borne was not occupying the house in August, 1980 because she was being cared for in the homes of her children, their identities not specified or revealed in the record.
Clifton, a resident of Baton Rouge, went to the "family homesite" on August 28, 1980 to check on the property. A carpenter for "many years," Clifton made repairs to the home on an "as needed" basis. The family homesite is located near Gonzales in Ascension Parish. At some unspecified time before Clifton visited the property on August 28, he and some of his siblings had filed suit to evict his nephew Ronald and his live-in fiancee, Louise Poth, who had moved a mobile home onto the "family homesite" in close proximity to the residence on it, which displeased Clifton and other siblings. While at the house on August 28 Clifton unplugged an extension cord running from inside the house to the water well pump which provided the mobile home its water supply; he threw the extension cord into the yard. The next day he returned to the property and again found the extension cord plugged in to supply the water well pump its source of power; again, he unplugged the cord and threw it into the yard. Louise Poth, having been made aware of Clifton's presence at the property, took action to prevent his leaving; she blocked the driveway, blocking his exit. Ronald and two other men stood nearby while Clifton, unable to move his automobile from its trapped position, sat, in fear for his personal safety. Approximately thirty minutes later an Ascension Parish Deputy Sheriff arrived and arrested Clifton for disturbing the peace, taking him to the Sheriff's sub-station where he was booked and fingerprinted. About three hours elapsed before Clifton's sister-in-law posted a property bond and he was released from custody.
Shortly after Clifton's release on bail from Ascension, Eunice appeared before an Ascension Parish Justice of the Peace and filed a complaint against Clifton for disturbing the peace and simple criminal damage to property. The latter charge grew out of Eunice's having accused Clifton of cutting the cord of the refrigerator on the unenclosed back porch of the house on two separate occasions, namely August 28 and August 29. Shortly thereafter, Clifton was re-arrested in Baton Rouge on the basis of the Ascension Parish charges, booked, fingerprinted and released on a separate bond.
Clifton was acquitted of the charges in Judge Kling's division of District Court on January 27, 1981 and on July 2, 1981 he sued Eunice, Ronald and Louise for false arrest, false imprisonment and malicious prosecution. All three defendants filed a joint answer less than two weeks after Clifton's suit was filed and three weeks after filing their answer Louise Poth, using *8 the services of the same law firm,[1] sued Clifton in East Baton Rouge Parish, his domicile, for false arrest and malicious prosecution growing out of his having pressed charges of trespassing and disturbing the peace against her. As a result of Clifton's complaint, a Deputy Sheriff went to Louise's workplace and informed her that he had a warrant for her arrest and he let her go to the workplace of her fiance, Ronald Borne, who accompanied her when she turned herself in at the sub-station where she was booked. The District Attorney's Office in Ascension Parish dismissed all charges against Louise on the date set for trial. The matter of Louise's suit against Clifton is not before the Court; she neither appealed the decision nor answered Clifton's appeal of the dismissal of his suit against her.
We are called on to decide whether Clifton Borne proved his allegations of false imprisonment and malicious prosecution.
The District Judge stated at the conclusion of the testimony he did not need memoranda of law and that he would take the matter under advisement. Eleven days later the Judge simply stated in his judgment that "the law and the evidence are in favor of defendant(sic)." The record is totally devoid of any reasons for judgment, stated either in writing or orally from the Bench. Therefore we do not have the benefit of the Trial Judge's thinking which led to his conclusion.
We note that defendant Ronald Borne did not testify and nothing in the record suggests that he was present during the trial. Also, Louise's two daughters who lived in the mobile home with her and her fiance, Ronald Borne and were physically at the "family homesite" and supposedly observed Clifton's arrival on both days in question, were not called as witnesses by their mother either in defending Clifton's suit or in support of her suit against Clifton. Under these circumstances, we apply the adverse inference or presumption principle against defendants Eunice Borne Brown, Louise Poth and Ronald Borne. Hayes v. Commercial Union Assurance Co., 459 So.2d 1245 (La.App. 1st Cir.1984).

FALSE IMPRISONMENT
O'Conner v. Hammond Police Dept., 439 So.2d 558 (La.App. 1st Cir.1983) succinctly states the law of false imprisonment, as follows:
The tort of false imprisonment has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention.... Unlawful detention is restraint without color of legal authority.... Thus, if an arrest is made either without any legal process or warrant or under a warrant void and null upon its face, a false imprisonment has occurred.... However, if a person is arrested pursuant to statutory authority, there is no liability for damages for false imprisonment.... 439 So.2d at 560.
The testimony in the present case supports Clifton's contention that he was unlawfully detained by the action of Louise Poth's blocking his exit from the driveway of the family homesite in which he had an undivided ownership. On the contrary, Ronald Borne and Louise Poth had no ownership interest in the property. Even so, Louise testified that because she was Ronald's "common law wife" she had the "right to take care of his property" and for that reason detained him by blocking his exit while Ronald and two other men stood nearby, thus placing Clifton in great fear for his personal safety. After being trapped for about thirty minutes the Sheriff's deputy arrived and removed him from his position of peril, either real or perceived, by arresting him and taking him into custody. The officer was dispatched *9 as a result of a telephone call from Eunice that Clifton was at the property; testimony is contradictory as to whether Louise or Ronald called Eunice at work and related that Clifton was there and could not get away; suffice it to say that Eunice reacted to a call from either Ronald or Louise and that Ronald and two others made sure Clifton did not get away before the police arrived.
Ever mindful that an appeals court is not free to reverse a trial court unless it is found, from the record as a whole, that the Trial Court's findings and conclusions are clearly erroneous, we find that the Trial Court's judgment is manifestly or clearly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Clifton did establish, by the required preponderance of the evidence, that he was detained, until the police arrived, by the defendants, acting in concert, without color of legal authority.

MALICIOUS PROSECUTION
In O'Conner, supra, we restated the well established law of malicious prosecution, as follows:
The elements of the tort of malicious prosecution are as follows: (1) commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.... 439 So.2d at 561.
Malice may be inferred from the circumstances of a particular case. Robinson v. Goudchaux, 307 So.2d 287 (La.1975); McClendon v. Carrier, 451 So.2d 163 (La. App. 1st Cir.1974). The record reveals that mutual ill-will existed between Clifton and his sister, Eunice, going back to Eunice's early childhood, as demonstrated by Clifton's characterizing Ronald as Eunice's "illegitimate son" and reluctantly conceding their relationship by testifying that "due to no fault of my own ... we're supposed to be brothers and sisters" and shown by Eunice's testimony that although no one observed Clifton cut the refrigerator cord she "would have assumed it was him" and nothing would have been gained by speaking with him because Clifton has "always had a hatred for me" and they were "not on speaking terms." The record has more than adequate information from which we infer malice on the part of Eunice, Louise and Ronald. The eviction suit brought by Clifton and some of his siblings to have the mobile home removed from the "family homesite" certainly did nothing to endear him to any of the defendants. The family discord which existed between Clifton and Eunice got out of control and precipitated Eunice's "rashly filing an affidavit which resulted in plaintiff's having to answer to criminal charges which resulted in his acquittal." Even as to his acquittal, Eunice testified "he wasn't exactly found not guilty. We just couldn't prove it."
We hold that all the elements of malicious prosecution were proved by a preponderance of the evidence. Clifton's claim that his pre-existing heart condition was aggravated by being arrested on at least two separate occasions (possibly four), arising out of the same incident, is not corroborated by medical testimony or records of any health care professional or facility. However, "damages are also to be presumed in a case where all other elements of a suit for malicious prosecution are satisfied. In the absence of proof of special damages, however, those damages will usually be nominal." Robinson v. Goudchaux's, supra, at 290. A criminal prosecution is regarded as stigmatizing and disparaging the reputation of the person charged with crime and an appropriate award in a suit which is based on a dismissed civil proceeding wrongfully brought would not be appropriate in a case based on an acquittal of a criminal charge. Robinson v. Goudchaux's, supra, at 290.
In the present case Clifton sustained lost wages of $343.20 and expended *10 the sum of $1,000.00 for legal services in defending the criminal proceedings and prosecuting the suit which is now on appeal. While it is difficult to determine how much Clifton should be awarded for the humiliation, embarrassment and stigma resulting from the criminal proceedings, we believe an award of One Thousand Two Hundred Dollars will be adequate. Whittington v. Gibson Discount Center, 296 So.2d 375 (La.App. 2d Cir.1974). Clifton's going back to the property a second time, knowing the hard feelings which existed between him and Eunice and that he among others had an eviction suit pending, dictates against a larger award. While the defense of contributory negligence is not available to defendants charged with the intentional tort of malicious prosecution, his going back to a place under circumstances which should have alerted him to possible trouble militates against awarding him general damages greater than $1,200.00.
The judgment of the District Court is reversed and judgment is rendered in favor of Clifton Borne and against Eunice Borne Brown for the sum of $2,543.20, for malicious prosecution and the losses and expenses resulting therefrom, plus legal interest thereon from date of judicial demand until paid, and for one-half the costs of court at the trial level and on appeal; judgment is rendered in favor of Clifton Borne and against Louise Poth Borne and Ronald Borne, in solido, for the sum of $1,000.00 for false imprisonment, plus legal interest thereon from date of judicial demand until paid, and for one-half the costs of court at the trial level and on appeal.

REVERSED AND RENDERED.
CRAIN, J., concurs. Although the facts found are sketchy plaintiff claims he was unlawfully detained and defendant Poth admits she detained him. Since no one factually disputed this conclusion it stands.
LANIER, J., dissents and assigns reasons.
LANIER, Judge, dissenting.
The majority has reviewed a cold record and determined that the trial court, which observed the appearance and demeanor of the witnesses, committed manifest error in its factual rulings. After reviewing the same cold record, I find that the majority holdings are factually and legally wrong.

TESTIMONY OF THE WITNESSES
Clifton Borne testified he was a resident of Baton Rouge, Louisiana, and was the brother of Eunice Borne Brown. Ronald Borne was Eunice's son. Ronald married Louise Poth Borne on or about December 31, 1980. Prior to August 29, 1980, Ronald and Louise were living together on the Borne family property. Clifton considered this an illegal thing, and he filed suit to have them removed. On August 29, 1980, Clifton went to the Borne family home located on the Borne family property. He observed an extension cord leading from the house to the water well. Clifton felt the cord constituted a fire hazard, unplugged it and threw it outdoors. At that time, Ronald, Louise and two men were on the property. Clifton started to leave the property in his car, but Louise and Ronald blocked the exit driveway "and forced me to stay there until they got uh, Sheriff Bocola out there to arrest me." Louise sat in her car and refused to move it. Ronald and two other men (whom he did not recognize) stood by. Clifton testified that "I feared for my life when I was over there, when they blocked my exit." Clifton remained in his car about thirty minutes until a deputy sheriff arrived and arrested him. He was subsequently arrested three more times for this same incident. Clifton denied cutting the electric cord on the refrigerator at the Borne family home, and he did not admit to being on the family property on August 28, 1980. Clifton filed disturbing the peace charges against Louise.
Louise Poth Borne testified she and Ronald Borne lived in a mobile home next to the Borne family home with her two daughters. (The two daughters were twenty and eighteen years of age at the time of trial on *11 May 3, 1984.) Eunice Borne Brown owned a refrigerator which was located on the back porch of the family home. Louise and Eunice both kept things in the refrigerator. Clifton Borne was observed on the property on August 28, 1980. After he left, it was discovered that the extension cord to the water well pump was unplugged and the electric cord on the refrigerator was cut. Louise got up early on the morning of August 29, 1980, and went to the refrigerator. It was working properly at that time. On the afternoon of August 29, Clifton Borne was again observed on the property. Clifton went to the back of the house where the refrigerator was located. Louise went to the back of the house and found the refrigerator electric cord cut again. The extension cord for the water pump was again unplugged. Louise and her daughters did not observe anyone else on the property. No one actually saw Clifton cut the electric cord. Eunice was contacted by telephone and advised of what happened. Louise gave the following testimony:
Q. Okay, who told you to go out there and block him in?
A. Nobody.
Q. You did it on your own?
A. That's right.
....
Q. Well, wasn't it a fact that, disturbing, his testimony is, he filed the disturbing the peace charges because you blocked him in on the driveway.
A. I didn't disturb the peace. He beat on my car.
Q. But, you did block him in, to keep him from leaving?
A. Yes, sir. I did.
Q. To keep him from leaving?
A. Pardon me?
Q. And keep him from leaving?
A. Yes, sir. I did. Because, we had called the sheriff's office.
....
Q. Did Ronald tell you to go block him in?
A. No, sir. He did not.
Q. So, you took it on yourself?
A. Yes, I did.
Eunice Borne Brown testified that she was Clifton's sister. She owned a refrigerator that she kept on the porch at the family home. Ronald and Louise were also using the refrigerator. The refrigerator had been there about six or eight months. On August 28, 1980, Eunice was at her place of work, which was located about one mile from the family property, when she received a telephone call from Louise's daughter and advised that Clifton was on the property. She left work to see what happened and passed Clifton on the road leading from the property. When she arrived on the property, Louise told her she was washing clothes and, all of a sudden, the water quit coming. Eunice examined the refrigerator and found its electric plug was cut. She replaced the plug. On August 29, 1980, Louise called Eunice and advised her that Clifton was back on the property and that the water well was unplugged again and the electric cord to the refrigerator was cut off. Eunice did not tell Louise to hold Clifton on the property. Eunice then filed charges against Clifton with the justice of the peace.

REVIEW OF TRIAL COURT FINDINGS OF FACT WHEN NO REASONS FOR JUDGMENT ARE GIVEN
The parties herein did not ask for, and the trial court did not give, reasons for judgment. When a trial court fails to render specific findings of fact, a reviewing court must evaluate the record in a light most favorable to the party who prevailed at trial. Eubanks v. McDowell, 460 So.2d 42 (La.App. 1st Cir.1984); Jeffers v. Hansen, 441 So.2d 283 (La.App. 4th Cir.1983); Ford Motor Credit Company v. Diffey, 378 So.2d 1032 (La.App. 2nd Cir.1979), writ denied, 381 So.2d 508 (La.1980).
A review of the statement of "facts" in the majority opinion shows that the testimony of Clifton was apparently accepted by the majority as credible and was *12 adopted as the facts of the case. The contradicting testimony of Eunice and Louise is not set forth in detail and is barely discussed. The above-cited jurisprudence is not considered in the majority opinion. If this jurisprudence is considered, the trial court judgment must be construed as accepting the testimony of Louise and Eunice and rejecting that of Clifton. After reviewing the cold record herein, I cannot say that such a factual ruling on the credibility of the witnesses is clearly wrong, especially since the trial court observed the appearance and demeanor of the witnesses and we did not.

ADVERSE INFERENCE FOR FAILURE TO CALL WITNESSES
It appears well settled in Louisiana jurisprudence that when a party to a lawsuit has a witness available whom he fails to call without explanation, an adverse inference arises that the testimony of the witness would be unfavorable to the party. Succession of Lyons, 452 So.2d 1161 (La. 1984); Succession of Riggio, 405 So.2d 513 (La.1981). This inference is not sufficient to overcome the positive testimony of other witnesses because a litigant is not required to produce all witnesses who might have some knowledge about the matter in dispute; and this is particularly true when a witness is equally available to the other opposing litigants. Hayes v. Commercial Union Assurance Company, 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985); Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3rd Cir.1982).
The majority has applied this inference against the appellees because Louise Poth Borne's two daughters and Ronald Borne were not called as witnesses by them at the trial. There were only three substantive witnesses at the trial: Clifton Borne, the appellant, and Eunice Borne Brown and Louise Poth Borne, two of the appellees. There is nothing in the record to show that Louise Poth Borne's two daughters and Ronald Borne were not equally available for subpoena by either side. Discovery procedures were available to Clifton to determine the testimony of these witnesses. Both Louise Poth Borne and Eunice Borne Brown testified for the appellees' side of the case. The trial court ruling, viewed in the light most favorable to the appellees, indicates that the testimony of Clifton Borne was rejected and that of Louise Poth Borne and Eunice Borne Brown was accepted. The acceptance of this positive testimony rebuts any inference that may have been created.

MALICIOUS PROSECUTION
The elements of the tort of malicious prosecution are correctly set forth in the majority's opinion. The evidence presented at trial, when viewed in the light most favorable to the appellees, shows that the appellant failed to prove the element of absence of probable cause by a preponderance of the evidence.
Probable cause to have someone arrested for a crime is defined as facts and circumstances which are sufficient to justify a man of average caution to believe that the person to be arrested committed an offense. La.C.Cr.P. art. 213; State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.1983). Probable cause depends upon the particular facts of each case and whether the circumstances were such as to create the belief in a reasonable mind that the plaintiff was guilty of the crime charged. Coleman v. Kroger Company, 371 So.2d 1186 (La.App. 1st Cir.1979), writ denied, 372 So.2d 1041 (La.1979), which was cited with approval in Jones v. Soileau, 448 So.2d 1268 (La.1984). The fact that Clifton was found not guilty of the charges against him does not negate a finding of probable cause. Motichek v. Clovis-Hendry, Inc., 280 So.2d 225 (La. App. 1st Cir.1968), writ denied, 282 So.2d 522 (La.1973). To constitute probable cause, the evidence must show more than mere suspicion but less than beyond a reasonable doubt. State v. Bell, 395 So.2d 805 (La.1981); State v. Sterling, 462 So.2d 290 (La.App. 1st Cir.1984), writ denied, 466 So.2d 466 (La.1985). The fact that there *13 was no direct evidence that Clifton cut the electric cord is not controlling. Since circumstantial evidence can serve as the basis for a criminal conviction (La.R.S. 15:438), it can certainly serve as a basis to show probable cause for a criminal arrest.
The operative facts supporting probable cause in the instant case are as follows:
(1) on August 28, 1980, Clifton was observed on the family property and the water well extension cord was found unplugged and the refrigerator electric plug was found cut;
(2) the refrigerator electric plug was fixed and the refrigerator was working properly on the morning of August 29, 1980;
(3) on the afternoon of August 29, 1980, Clifton was again observed on the property and was seen in close proximity to the refrigerator;
(4) shortly thereafter, the electric cord on the refrigerator was discovered to be cut;
(5) no one was seen on the property other than Ronald, Louise, Louise's two daughters and Clifton; and
(6) Clifton was attempting to leave the property.
I believe it reasonably can be inferred from these facts that Clifton cut the cord. Proof beyond a reasonable doubt is not required, only probable cause. This circumstantial evidence is sufficient to establish probable cause. Cf. Blood v. State, Department of Wildlife & Fisheries, 458 So.2d 1008 (La. App. 3rd Cir.1984). The trial court's judgment dismissing the malicious prosecution cause of action is not clearly wrong.

FALSE IMPRISONMENT
Clifton has the burden as plaintiff to prove the elements of the tort of false imprisonment. One of the essential elements is detention. The restraint necessary to prove detention for false imprisonment purposes must be that which affords no reasonable means or method of egress; mere thwarting or obstruction of a person's will to go where he wishes is not sufficient. F. Stone, Tort Doctrine § 203(i) in 12 Louisiana Civil Law Treatise 267 (1977). In Crossett v. Campbell, 122 La. 659, 48 So. 141, 143 (1908), appears the following:
Our law (Rev.St. § 796) imposes a penalty for "false imprisoning," but does not define the offense. It is elsewhere defined as follows:

"False imprisonment is the unlawful and total restraint of the liberty of the person. * * *"
The right violated by this tort is "freedom of locomotion. It belongs, historically, to the class of rights known as simple or primary rights (inaccurately called absolute rights), as distinguished from secondary rights, or rights not to be harmed. It is a right in rem; it is available against the community at large. The theory of the law is that one interferes with the freedom of locomotion of the other at his peril. * * * The right of freedom of locomotion is violated when one is wrongfully detained against his will, or is in any way deprived, as distinguished from obstructed or subjected to inconvenience, of his right to come, or go, or stay, when and where, he wishes. Some conduct imposing restraint or detention is essential, but any conduct resulting therein is sufficient. It is the unlawful interference with the wish or desire of plaintiff which the law seeks to compensate. Free egress must therefore be impossible; the restraint must be total" Cyc. vol. 19, pp. 319, 322.
A note to the paragraph last above quoted reads:

"If plaintiff is free to go where he wants, he cannot sustain an action of false imprisonment; if he is prevented from going where he may have a right to go, a mere partial obstruction to his will may be the basis of some other form of action, but not of the one here under consideration. Bird v. Jones, 7 Q.B. 742; * * * Stevens v. O'Neill, 51 App.Div. 364, 64 N.Y.Supp. 663.
* * * * * *

*14 "There is no legal wrong unless the detention was involuntary." Cyc. vol. 19, p. 323.
A note to this paragraph reads:
"One who submits to arrest and imprisonment rather than pay a small license fee, illegally exacted, but which he might have recovered back, without serious injury or damage, has no cause of action. Cottam v. Oregon City (C.C.) 98 Fed. 570."
And, again, we find that it has been held that:
"When the contest is for possession of personal property, and there is no intent to detain the person, false imprisonment is not made out. McClure v. State, 26 Tex.App. 102, 9 S.W. 353." [Emphasis added.]
In certain factual circumstances, total restraint of personal liberty may result from a reasonable fear of impending personal difficulty. Clark v. I.H. Rubenstein, Inc., 326 So.2d 497 (La.1976); Pace v. Winn-Dixie Louisiana, Inc., 339 So.2d 856 (La.App. 1st Cir.1976), writ denied, 341 So.2d 404 (La.1977).
In Rougeau v. Firestone Tire and Rubber Company, 274 So.2d 454, 457-458 (La. App. 3rd Cir.1973), the operative facts and the ruling of the court are set forth as follows:
Plaintiff also sought damages for false imprisonment. The facts revealed that Drummond and two employees of defendant and plaintiff went to his home to search for the missing property. Plaintiff, on advice of his attorney, refused to allow the search. Drummond, the employees of defendant, and plaintiff returned to the plant. Plaintiff was asked to wait in the guardhouse. Two guards were instructed to keep plaintiff in the guardhouse. However, both guards stated they did not consider plaintiff to be a prisoner. Plaintiff was allowed to leave when he fell ill. The total amount of time which plaintiff spent in the guardhouse did not exceed thirty minutes.
We agree with the trial judge that plaintiff was not falsely imprisoned. At no time was he totally restrained. Crossett v. Campbell, 122 La. 659, 48 So. 141 (1908). Additionally, plaintiff never revealed to anyone that he did not want to stay in the guardhouse, thus showing his implied consent to stay. Coates v. Schwegmann Bros. Giant Super Markets, Inc., 152 So.2d 865 (La.App. 4 Cir.1963); Banks v. Food Town, 98 So.2d 719 (La.App. 1 Cir.1957).
[Footnote deleted.]
[Emphasis added.]
In the instant case, Louise blocked the automobile exit from the family property. The only evidence of record to show that any other method of egress was blocked was the following testimony by Clifton:
A. Uh, both of them testified that uh, that they did not see me cut no cord. Eunice was not present. Louise was in her trailer at the time, when I went over there. Ronald was over there. And he had two other people, which, I feared for my life when I was over there, when they blocked my exit. They had uh, Louise sitting in the car, refused to move her car. And uh, they had Ronald and two other men, looked like they didn't recognize, standing over there. I didn't know what they were up too.
The evidence presented by the appellees indicates Louise's two daughters were present on the premises, not two men. There is no evidence in the record to corroborate Clifton's statements about two men being present or about his fear for his life. Apparently, the trial court did not accept Clifton's testimony on these points. There is no evidence of record that anyone did anything (other than "standing over there") to block Clifton's nonautomobile means of egress from the property. Although Louise judicially confessed she blocked the exit road with a car to keep Clifton on the property, this admission, coupled with the other evidence (or lack thereof) in the record, does not show a total restraint of Clifton's freedom of movement; it only shows a partial obstruction. *15 This is not sufficient to constitute false imprisonment as that tort is defined in Crossett v. Campbell. Crossett v. Campbell has not been overruled, and we are obligated to follow it.
Clifton's evidence against Ronald on this cause of action is totally deficient. The fact that Ronald was "standing over there" (assuming Clifton's version is accepted) does not make him a party to false imprisonment. Louise's admission (judicial confession) about her motive for blocking the road is not binding on Ronald. La.C.C. art. 2291, amended and reenacted as La.C.C. art. 1853 by Act 331 of 1984, effective January 1, 1985. Louise testified Ronald did not ask her to stop Clifton and she acted on her own. After the incident, Clifton filed charges against Louise but did not file any against Ronald. When asked about this at trial, Clifton responded as follows:
Q. Mr. Barne [sic], have you filed charges against anyone? Have you filed charges ...
A. Yes, I did.
Q. Who did you file charges ...
A. I filed disturbing the peace charges against Louise Poths for the fact that she took me imprisoned on the property over there. In other words, she kept me from going about my long lawful business. That was disturbing my peace.
There is no justification in law or fact for a judgment against Ronald.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] When the defendants' answer was filed in Clifton's suit and when the suit by Louise against Clifton was filed in East Baton Rouge Parish, the Trial Judge in this case was a member of the law firm which defended the original defendants and prosecuted Louise's suit, consolidated for trial, after transfer from East Baton Rouge to Ascension, simultaneously with the trial of Clifton's suit. This strikes us as a case which the Trial Judge should have, on his own motion, recused himself. See Code of Judicial Conduct, Canon 2(A); La.C.C.P. arts. 151 et seq.