CARTER, Judge:
This suit was filed by Janet Hoff against Canal Refining Company, Inc. and Stewart Rohner for damages in the amount of $2,776,000.00 for conversion, false arrest, and malicious prosecution. In her petition, Hoff alleges that Canal, through its agent or employee, Rohner, evicted her from business premises she leased from Canal, confiscated her property located on those premises, and filed unwarranted criminal charges against her which resulted in her arrest.
The record indicates that this lawsuit was filed on April 12,1983, and that service of process was made on the defendant, Canal Refining Company, Inc. on April 15, 1983. The record also shows that no answer or other appearance was made by the defendants in response to this lawsuit, and accordingly, a preliminary judgment by default was entered against Canal[1] on May 3, 1983. Since no answer or other appearance was made by Canal after the entry of the preliminary judgment by default, plaintiff then proceeded on May 9, 1983, with confirming the default and taking a judgment against defendant in the amount of $272,-965.00.
On May 17, 1983, Canal filed a motion for a new trial on the grounds that a verbal agreement had been entered into by the attorneys in this suit. Canal contended that the attorney for plaintiff agreed to allow attorney for defendant extra time within which to plead or file an answer herein. In addition to the motion for a new trial, defendant filed a petition to annul the judgment of May 9, 1983, on the grounds that the judgment was obtained by fraud or ill practices.
A hearing was held on the motion for new trial, and the trial judge ruled in favor of the plaintiff and denied the motion. The proceeding to annul the May 9th judgment is pending.
Defendant-Canal appeals and assigns the following errors:
(1) The trial judge erred in failing to grant Canal Refining Company a new trial because default was confirmed during an extension of time to plead obtained by Canal’s counsel.
*191 (2) The trial judge erred in finding that Canal Refining Company did not obtain an extension of time to respond to the lawsuit.
(3) The trial judge applied an erroneous standard in determining that the default judgment rendered should stand.
(4) The minute entry of the preliminary default did not specifically name Canal Refining Company and therefore was in error.
(5) The trial judge erred in finding that Stewart Rohner was acting for and on behalf of Canal Refining Company when he signed an affidavit charging Janet Hoff with theft.
(6) The finding that the criminal proceeding against Janet Hoff was a malicious prosecution is erroneous.
(7) The damage award made by the trial judge is excessive.
DEFAULT JUDGMENT
On April 12, 1983, Hoff filed suit against Canal and Rohner. Canal contends that the following occurred thereafter. The petition was served on Canal’s agent for service of process on April 15, 1983. Ten days later the law firm of McGlinchey, Stafford, Mintz and Cellini was retained to defend Canal in the litigation. A paralegal who worked for McGlinchey telephoned Hoffs counsel (Law Offices of Keith Whipple) to request an informal extension of time for the filing of responsive pleadings. According to Canal, the paralegal spoke with someone at the Whipple office and obtained a thirty (30) day extension of time. A letter confirming the extension of time was mailed on May 10, 1983.
Plaintiffs counsel denies that the extension was granted. According to plaintiffs counsel, all members of the Keith Whipple firm (Keith M. Whipple, Vanessa Guidry Whipple, and -Charles Gary Blaize) were attending the Bar Association Convention in Paris, France at the time the phone call requesting the extension was made.
Appellants first four assignments of error relate to the default judgment. We will address Assignments of Error three and four first.
Appellant argues in assignment of error no. 3 that the trial judge applied an erroneous standard in determining that the default should stand. In support of his argument, appellant cites the Supreme Court case of Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). In Kem Search, after defendant-Sheffield, himself an attorney, had been served he notified plaintiffs attorney and requested additional time in which to obtain the services of an attorney and to file responsive pleadings. In addition, he requested an opportunity to review the matter with opposing counsel and attempt to work out an amicable settlement. Plaintiffs attorney responded by letter in which he expressed a preference but not a demand that an answer be filed. The court found that the communications and the subsequent actions by plaintiffs attorney were consistent with Sheffield’s understanding that he had been given additional time. The court reversed and annulled the default judgment.
The present case is easily distinguishable. There was no contact between Hoff’s attorney and Canal’s attorney. In fact, Hoff’s attorney did nothing, either by communication or action to indicate that Canal was given an extension of time in which to answer. Clearly, plaintiff’s attorney did not contribute to Canal’s failure to file responsive pleadings. We find no merit in this argument.
Appellant next argues, in assignment of error no. 4, that the minute entry of the preliminary default did not specifically name Canal Refining Company and therefore was in error. In urging this error, appellant contends that where there are multiple defendants and the preliminary default is entered only as to some of those defendants, the preliminary default must specifically name the defendant against which it is directed to validly join issue between the parties. Appellant cites Ashy v. Cosmopolitan Credit & Inv. Corp., 365 So.2d 1171 (La.App. 3rd Cir.1978).
*192 In the instant case, the minute entry in the court record states that “the Court ordered that a Preliminary Judgment by default be entered into this proceeding.” Canal is not named specifically. However, the handwritten copy of the minutes, from which the minute entry is typed, clearly shows that the preliminary default was taken against Canal.[2]
We find no merit in this assignment of error.
In assignments of error nos. 1 and 2, appellant argues as follows:
(1) The trial judge erred in failing to grant Canal Refining Company a new trial because default was confirmed during an extension of time obtained by Canal’s counsel.
(2) The trial judge erred in finding that Canal Refining Company did not obtain an extension of time to respond to the lawsuit.
We have carefully reviewed the record and find that the written reasons given by the trial judge in denying the motion for a new trial correctly dispose of the issues presented in the first two assignments of error. Accordingly, we adopt the reasons given by the trial judge as our own.
The trial judge stated: *193 not admitting) that Ms. Junker did in fact speak to Ms. Ellender about an extension of time, the Court does not believe Ms. Ellender agreed to or mislead Ms. Junker into believing an extension was granted.
*192 “The court, after hearing the testimony of the witnesses on the motion for a new trial is convinced that the defendant has failed to prove by a preponderance of the evidence that counsel for plaintiff agreed and consented to an extension of 30 days within which time defendant could plead.
The evidence established that when the law firm representing defendant became aware of this lawsuit and had been hired to represent the defendant, a paralegal in said office, Claudia Junker, placed a long distance telephone call to the law office of Mr. Keith M. Whipple, in Houma, Louisiana, for the purpose of obtaining an extension of time within which to plead. The phone log filed into evidence shows that on April 25, 1983 at 1:50 P.M., a phone call was placed to Mr. Whipple’s telephone number in Houma and that the phone call was for a total of one minute. Ms. Junker contends that she talked to a secretary in Mr. Whipple’s office during that one minute telephone call and obtained an extension of time of 30 days within which to plead or file a response on behalf of Canal Refining Company, Inc., in this lawsuit. The evidence in support of the contention that an extension was granted consists of the sworn testimony of Ms. Junker, the telephone bill filed into evidence showing that a phone call was made and an office form information sheet filled out by Ms. Junker showing that a telephone call was made to Mr. Whipple’s office and that an extension of time was granted on her request.
On the other hand, counsel for plaintiff offered evidence in the form of the testimony of the secretary to Mr. Whipple, namely, Judy Ellender, who testified that no extension of time was granted, and in fact, she has no recollection of ever receiving the phone call or talking to anyone from the McGlinchey law office about this lawsuit. The record also shows, beyond all doubt, that the three lawyers in Mr. Whipple’s law firm, Mr. Keith Whipple, Ms. Vanessa Guidry and Mr. Gary Blaise were not in the office at that time since they were in route to or had arrived in Paris, France on that date. The record is also absolutely and totally clear and uncontradicted that at no time did any lawyer in the McGlinchey firm ever discuss, confer with, or request personally from an attorney in the Whipple law firm an extension of time in which to plead. The only conversation which could have possibly occurred was the one time when a telephone call was placed by Ms. Junker to the telephone number of Mr. Whipple’s law office. Assuming (but
*193 In addition to the testimony of the secretary in Mr. Whipple’s law office, it has also been established to the satisfaction of this court that no secretary in that law office had or has authority to grant an extension of time, and said employees have never been permitted or allowed to make any agreements or com-mittments on behalf of the attorneys in any lawsuit handled by that law firm. All agreements or accomodations are made solely by the lawyers and while a secretary may have the authority to convey such information to the lawyers, they never are allowed to make that decision and committment on their own.
While the court is not completely familiar with the prevailing practice among lawyers in matters of this kind, (not having engaged in the private practice of law for many years), the court does have a serious doubt that lawyers today permit their secretaries to make binding decisions in lawsuits of this kind, or of any kind. It appears more probable that these type of decisions are made by attorneys, and not by the secretaries. The particular procedure followed more often than not by attorneys, when an attorney needs additional time within which to plead or respond in a lawsuit, is for the attorney to get an extension of time from the Court. By doing so, it is not necessary to make a request of an opponent and depend on his generosity, but rather by seeking the protection and approval of the court, which is always freely given, the attorney is fully protected and runs no risk of a misunderstanding.
The Court also feels that allowing agreements between secretaries or other personnel not attorneys and members, of the firm, is and would be a poor policy at best. It has always been the belief of this court that matters involving.a lawsuit in which the parties are making con-sessions or agreements, that those matters should be left to the lawyers and should not involve the secretaries or other non-lawyer employees in a law office. It is also to be noted that under Rule 18 of this Court, all agreements of counsel, except those made in open Court, must be in writing and bear their signature. While that rule is not inflexible and must be ignored where a travesty of justice has occurred, this Court does not believe that agreements of secretaries or employees of a law office to be binding or should be given the same consideration and enforceability as that of agreements between counsel, particularly verbal agreements. If agreements between counsel must be in writing, it certainly seems that agreements between secretaries should not only be in writing, but must be approved by the attorneys that are involved in that agreement before they become binding.
In conclusion on this point, the Court will restate the reasons why it feels that a motion for a new trial should not be granted:
1. The Court does not believe that counsel for the defendant has established by a preponderance of the evidence that an agreement or understanding was made as a consequence of the phone call on April 25, 1983 granting to defense counsel additional time within which to plead or answer this lawsuit. While the phone call to Mr. Whipple’s office may have been made, there is not sufficient evidence or proof that a commitment was made by someone in that office with authority to do so as to justify the conclusion by this Court that an extension of time was granted to the McGlinchey law firm as contended by them.
2. That since no attorney in the Whipple law firm received a telephone call or other communication from defense counsel, there is no reason to believe that the members of the Whipple law firm knew or were aware of the fact that the McGlinchey law firm was re *194 questing an extension of time within which to plead.
3. And, the court is satisfied that the evidence has proved beyond all doubt that no one out of the Whipple law firm ever agreed to or considered an extension of time within which to plead in this lawsuit.
For these reasons, the court must rule that the defendants are not entitled to a new trial on the grounds that there was an agreement to give them this time to plead and that agreement was breached or violated by counsel for plaintiff.”
MALICIOUS PROSECUTION
In assignment of error no. 5, appellant argues that the trial judge erred in finding that Stewart Rohner was acting for and on behalf of Canal Refining Company when he signed an affidavit charging Janet Hoff with theft.
Appellant contends that documents submitted by plaintiff which allegedly bear Rohner’s signature — the lease of the business premises involved herein, a handwritten list of the equipment, and the Canal dealers consignment agreement — were not properly identified and that the signatures on them were not verified by independent testimony.
The issue of whether or not Rohner was acting for and on behalf of Canal was considered by the trial judge on the motion for a new trial. In his reasons for judgment the trial judge stated:
“In addition to the witnesses that testified on the confirmation of default, there was introduced into the record at the trial, the entire criminal proceeding which lead to this lawsuit. The record of the criminal proceeding was certainly ad-missable on the confirmation of default since the criminal charge was the basis of an important part of Ms. Hoffs claim.
An examination of the criminal proceeding clearly shows that a criminal charge of theft of cash money allegedly belonging to Canal Refining Company was filed by defendant, Stuart (sic) Roh-ner against Miss Hoff. (See affidavit attached to Bill of Information # 128,518, criminal docket of Terrebonne Parish, Louisiana). The record also shows that Miss Hoff was arrested as a direct consequence of the filing of the criminal charge by Mr. Rohner_ The criminal record also shows that on March 25, 1983, a preliminary examination, motion for discovery and motion to suppress was held before a District Judge of this Court, and the transcript of those hearings is also filed in the criminal proceeding and has been made a part of this civil record. During those criminal hearings, Mr. Rohner testified, under oath, (as will be seen by reference to the transcript of the hearing filed herein), that he was employed by Canal Refining Company, defendant herein, and had been so employed for about 20 years. He also testified about his dealings with Janet Hoff on behalf of Canal Refining Company....
The record is also clear that Mr. Roh-ner was an employee of Canal Refining Company and acting for and on behalf of that Company when he filed the criminal charge that gave rise to this civil lawsuit.”
It is clear that the trial judge relied mainly on the testimony given by Rohner at the preliminary examination in finding that Rohner was acting for and on behalf of Canal when he instituted the charges against Hoff. We cannot say that he erred in so doing and we find no merit in appellant’s argument on this issue.
In assignment of error no. 6, appellant argues that two of the elements required for a prima facie case of malicious prosecution were lacking, i.e., plaintiff failed to establish the absence of probable cause for the criminal proceeding or the presence of malice.
The elements necessary to support a claim for malicious prosecution are:
1. The commencement or continuance of an original criminal or civil judicial proceeding.
*195 2. Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding.
3. Its bona fide termination in favor of the present plaintiff.
4. The absence of probable cause for such proceeding.
5. The presence of malice therein.
6. Damage conforming to legal standards resulting to plaintiff.
Hibernia Nat. Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980).
In an action for malicious prosecution the burden is ordinarily upon plaintiff to prove both malice and the absence of probable cause. But the authorities have firmly established the rule that where a committing magistrate, without a trial, has discharged the accused, or the prosecuting officer has dismissed the charge, or where a grand jury has returned a no true bill, there is presumption of want of probable cause with the result that, in a suit for malicious prosecution based on that discharge, the burden of showing that he acted on probable cause and without malice is upon the defendant. Robinson v. Rhodes, 300 So.2d 249 (La.App. 2d Cir.1974), writ refused, 303 So.2d 178 (La.1974).
In the instant case, the minutes of the criminal proceeding against Hoff clearly reflect the fact that a nolle prosequi was entered. In addition, the assistant district attorney prosecuting the charges against Hoff stated for the record that “a Preliminary Examination Hearing was had and No Probable Cause was ordered by the Court.” Based on this, plaintiff has established a prima facie case of malicious prosecution. Therefore, appellant bears the burden of showing that Rohner acted on probable cause and without malice.
Appellant relies on Rohner’s testimony given at the preliminary examination in order to sustain its burden. Rohner testified that he went to the Canal station on June, 22, 1982, in order to get “a week’s receipts of consigned products that we had to collect for.” He further testified that Hoff was not at the Canal station, nor could he reach her at her apartment. It was at this time that he contacted the police.
At the close of the preliminary examination, Hoffs attorney argued that Hoff was not an employee of Canal, but rather—pursuant to the various agreements—was the holder of a franchise. Therefore, if Hoff left town with a week’s worth of receipts from the service station, Canal could allege that the money was owed, but Canal could have no grounds to allege that the money was stolen. See Harvey v. Bertaut, 303 So.2d 211 (La.App. 4th Cir.1974).
The issue of whether or not plaintiff has proven all of the elements of malicious prosecution was considered by the trial judge on the motion for a new trial. In his reasons for judgment, the court stated:
“The Court is also convinced that Miss Hoff has established by a preponderance of the evidence that the defendants herein falsely maliciously accused Miss Hoff of a serious criminal offense for which they had no proof that she was guilty.”
Based on the outcome of the criminal proceeding and appellant’s failure to rebutt plaintiff’s prima facie case, we find no error in the ruling of the trial court on this point.
DAMAGES
In this last assignment of error, appellant argues that the damages awarded by the court are excessive, are not supported by the evidence, and should be reduced.
The trial court awarded the following amounts:
(1) $35.00 meter deposit;
(2) $8,000.00 stock and merchandise;
(3) $12,430.00 for the business movables;
(4) $10,000.00 for unlawful conversion;
(5) $50,000.00 for false arrest and imprisonment; [3]
*196 (6) $13,500.00 lost past income;
(7) $18,000.00 future loss of income;
(8) $1,000.00 criminal bond;
(9) $10,000.00 attorney’s fees for Whipple’s defense in the criminal matter;
(10) $150,000.00 for humiliation, embarrassment, anguish, stock, mental agony and pain, suffering, loss of character and reputation, both past and future; TOTAL JUDGMENT: $272,965.00
We will now address the arguments made by appellant concerning several of the above items of damage.
Regarding items (2) and (3), Hoff testified that after she took over the business she added $8,000.00 to $9,000.00 worth of stock to the business and that the $12,-430.00 represented certain movables which she had purchased from Canal at the time she leased the business premises. She testified that this sale was made on credit and that she still owed Canal $9,937.97 of the purchase price.
Plaintiff offered no proof that she had added $8,000.00 worth of stock, thus we deny recovery on this item. In addition, we reduce the $12,430.00 awarded for the movables to $2,492.03, which represents that amount that had been paid by plaintiff for those .items.
Next, we consider items (5) and (6) which represent damages for past and future earnings loss. Hoff testified that when she was running the station she was earning $1,500.00 to $2,000.00 per month. However, after she was arrested and during the time charges were pending (a nine month period) she could not obtain employment. The trial judge awarded her $1,500.00 for nine months, totaling $13,-000.00. We find no error in this award. However, we find that the $18,000.00 for future earnings loss to be speculative, and therefore, we reverse this portion of the award.
Lastly, appellant argues that the $200,-000.00 for nonpecuniary damages is excessive.[4] Hoff testified that as a result of the charges filed against her, she was arrested and spent eleven (11) days in jail. Aside from the testimony of Hoff that she had nightmares about the time spent in jail and that subsequent to the arrest friends and acquaintances “just don’t want me around,” there was no medical or expert testimony to verify these subjective complaints.
The trier of fact is given much discretion in awarding damages. LSA-C.C. art. 1934(3). The appellate court, in reviewing an award to determine if there has been an abuse of this “much discretion”, must look first to the facts and circumstances surrounding the particular case. If it is determined that the award is either excessive or inadequate, the court may then use prior awards to aid it in fixing an appropriate award. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The reviewing court may then amend the award such that it is lowered to the highest or raised to the lowest point which is reasonable within the discretion afforded the trier of fact. Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La.1981); Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979).
We find that the highest amount which may be awarded to Hoff, as within the reasonable discretion of the trial court, is $25,000.00. See Lewin v. First Paratransit Corp., 387 So.2d 1254 (La.App. 1st Cir.1980), writ denied 394 So.2d 607 (La. 1980); Graf v. McCrory Corp., 368 So.2d 1217 (La.App. 4th Cir.1979); Jefferson v. S.S. Kresge Co., 344 So.2d 1118 (La.App. 3rd Cir.1977).
*197 Accordingly, the amounts awarded by the trial court are amended, and the following damages are awarded:
(1) $35.00 meter deposit;
(2) $2,492.03 for business movables;
(3) $10,000.00 for unlawful conversion;
(4) $13,500.00 for lost past income;
(5) $1,000.00 for criminal bond;
(6) $10,000.00 for attorney fees; and,
(7) $25,000.00 general damages for malicious prosecution and imprisonment, humiliation, embarrassment, anguish, shock, mental agony and pain, suffering, loss of character and reputation, both past and future.
TOTAL JUDGMENT: $62,027.03
Costs are to be paid by plaintiff-appellee.
AMENDED, AND AS AMENDED, AFFIRMED.

. The judgment of default was rendered only against Canal Refining Company, Inc. No mention was made of Stewart Rohner.

. The handwritten minutes for Janet Hoff v. Canal Ref. Co., Inc., Docket No. 71915, dated May 3, 1983, provides as follows:
“P.D. as to Canal Ref. Co. Inc."

. We note that false imprisonment and malicious prosecution are distinct and separate theories of recovery. Cf. Tillman v. Hokum Bakeries, Inc., 244 So.2d 681 (La.App. 4th Cir.1971), *196 application denied, 258 La. 352, 246 So.2d 199 (La. 1971). Cf. also, O'Conner v. Hammond Police Dept., 439 So.2d 558 (La.App. 1st Cir.1983).

. The $200,000.00 represents the trial court award of damages of $50,000.00 for "false arrest and imprisonment” and the general damages of $150,000.00. Cf. O’Conner v. Hammond Police Dept., supra, for excellent discussion of limitations on actions for false arrest.