DOUCET, Judge.
The above numbered and entitled appeal was consolidated with an appeal entitled Hardy v. Security Industrial Insurance Company, 540 So.2d 1281 (La.App. 3rd Cir.1989). Both appeals arise out of the same factual situation. We decide all issues presented in both appeals in this opinion but render a separate decree in the companion appeal.
Plaintiff, Lavelle Sargee, was employed by defendant, Security Industrial Insurance Company, from July 3, 1979 until April 30, 1982. She was originally hired as a debit agent whose principal responsibilities were to collect premiums on the small industrial policies that the defendant issued. Eventually, Sargee became staff manager and supervised approximately five debit agents.
Plaintiff, Betty Hardy, was employed by Security Industrial from July of 1980 until June of 1982. During this time, Hardy was a debit agent and was under the supervision of Sargee.
After Sargee left her employment with Security Industrial, Security Industrial refused to pay her the salary and commissions which were due her. Sargee then sued Security Industrial in city court for all *1278 that was due her. Mrs. Hardy served as a witness on behalf of Mrs. Sargee.
After a trial on the merits, Security Industrial was cast for an amount equal to the back due wages owed to Sargee plus penalties and attorneys fees.
Shortly after the city court decision, Sar-gee and Hardy were each sued by Security Industrial for $12,500.00 for damages sustained as a result of the two women allegedly signing various checks and cash surrender forms on behalf of several insureds without the insureds’ permission.
Subsequently, an attorney for Security Industrial authored a letter to the District Attorney of Natchitoches Parish, Louisiana, advising the District Attorney of the alleged misdoings of Hardy and Sargee. The matter was then presented to the Natchitoches Parish Grand Jury and the Grand Jury handed down indictments on Hardy and Sargee citing numerous counts of forgery and theft. Sargee and Hardy were never given the opportunity to testify before the Grand Jury.
Hardy and Sargee appeared before the district court on a preliminary examination concerning the numerous counts of forgery and theft. Here, the district judge issued a written opinion ruling that there was no probable cause for the continuation of the criminal proceedings against the two.
After the dismissal of the charges against Hardy and Sargee, the two filed suit against Security Industrial on the theory of malicious prosecution. After a trial on the merits, the court ruled in favor of plaintiffs awarding each $10,000.00 and specifically stated that they had borne the burden of proving the requisite elements of malicious prosecution. It is from this judgment that Security Industrial appeals.
In Security Industrial’s first assignment of error, it urges that the trial court erred in finding that Security Industrial Insurance Company was liable for malicious prosecution. We disagree.
In order to analyze appellant’s first assignment of error, it is necessary to discuss certain policies that were adopted by Security Industrial. Security Industrial had a policy whereby it discouraged its agents and managers from letting insurance policies lapse. Normally, an insurance policy lapses when it is 31 days in arrears. Security Industrial instructed its agents and managers that it was permissible to carry an insured over the 31 day period. Generally, a family had several policies in effect at any given time. If an agent had a customer who was unable to keep his policies current, the agent, with the insured’s permission, could turn in one of the policies for its cash value and apply this amount toward the rest of the policies in order to keep the other policies current. The agent would send off the cash surrender form and a check would eventually issue. With the insured’s permission, the agent would sign the check on behalf of the insured and deposit the check into the company account and give the insured credit on their accounts page in the debit ledger. This would bring the insured up-to-date. If the agent was unable to eventually collect on the lapsed policy, the agent or the staff manager in charge of those books had the responsibility of payment.
In Parks v. Winnfield Life Insurance Co., 336 So.2d 1021 (La.App. 3rd Cir.1976), writ denied, 339 So.2d 351 (La.1976), this court set forth the six elements which must be present in order to prove malicious prosecution. The six elements are as follows:
1. The commencement or continuance of an original or civil judicial proceeding;
2. Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding;
3. Its bona fide termination in favor of the present plaintiff;
4. The absence of probable cause for such proceedings;
5. The presence of malice therein;
6. Damage conforming to the legal standards resulting to plaintiff.
Security Industrial asserts that of these six elements, plaintiffs failed to prove the absence of probable cause and the presence of malice.
*1279 With respect to the probable cause element, it is well established in our jurisprudence that when a plaintiff in an action for malicious prosecution is discharged upon preliminary examination, as occurred in the criminal prosecution against Sargee and Hardy, there is a presumption of want of probable cause and the defendant who instigated the criminal prosecution has the burden of showing that he acted on probable cause and without malice. Robinson v. Rhodes, 300 So.2d 249 (La.App. 2nd Cir.1974), writ refused, 303 So.2d 178 (La.1974), and cases cited therein; Hoff v. Canal Refining Co., Inc., 454 So.2d 188 (La.App. 1st Cir.1984).
Security Industrial supports its assertion that it acted with probable cause, inter alia, by urging that several of its insureds signed affidavits stating that their respective policies were cashed without their permission. Security Industrial is referring to the fact that an employee of Security Industrial, Mr. Cleo Calmes, secured these affidavits from a number of individuals who had insurance with the company. However, the affidavits do not state whether or not the insured had in fact given permission to Sargee or Hardy to sign the cash surrender forms or checks. Instead, the affidavits state that the insureds never received the check, that they never signed an application for change or surrender and never received any of the premiums personally. Plaintiffs readily admit that all of these statements are true. After plaintiffs received the particular insureds’ permission to sign the cash surrender form or check, the money was immediately put in the company account and credit was given to the insured for this amount. Thus, under this set of circumstances, the insureds would not have received the check, would not have signed the application for change or surrender and would not have received any of the premiums personally.
Security Industrial further supports its assertion that it had probable cause to take action against plaintiffs by alleging that plaintiffs admitted to forging the names of the policyholders on various cash surrender forms and checks. The fact that many of these documents were signed by plaintiffs was never contested. Both plaintiffs testified that they did on numerous occasions operate in this manner pursuant to the instructions of Earl Rhodes, the District Manager. However, plaintiffs testified that each time they signed an insured’s name to the cash surrender form or check, they had the permission of the insured.
Mr. Calmes, an employee of Security Industrial, testified that he was not aware of such a practice and was sure that the other districts did not allow agents to follow this practice. However, Mrs. Lillie Bell testified that she previously worked for Security Industrial in the Natchitoches office and that she signed numerous names on the back of cash surrender forms and checks with the insureds’ permission. Mrs. Bell further testified that this was the accepted procedure within Security Industrial Insurance Co. and that she was instructed by her staff manager to adopt such a practice. Additionally, Mrs. Bell testified that she saw several other members of her staff using this procedure.
Wanda Nichols testified that she previously worked for Security Industrial at the Lafayette branch as a cashier. Ms. Nichols added that as a cashier she observed several agents signing cash surrender forms for their insureds. Nichols testified that she also observed several agents signing the insureds’ checks and making deposits of this money on their behalf. Ms. Nichols added that when she later became a debit agent she also employed this practice.
Security Industrial further supports its assertion that it had probable cause to act by pointing to the fact that the use of the cash surrender value funds to keep the other policies in force benefited plaintiffs in that it inflated their commissions. While this may be true, we do not find this fact to be significant enough in itself to constitute probable cause. What is of importance is the fact that each time a check was issued by Security Industrial and signed by either plaintiff, it was deposited in Security Industrial’s account. The insureds were given *1280 credit for the amount of money generated from the cash surrender of the policy, their arrearages were brought up to date, and their insurance was maintained in effect. There is no evidence that any of the checks signed by either plaintiff were diverted to their personal use.
Finally, Security Industrial asserts that it had sufficient probable cause to request a District Attorney’s investigation by pointing to the fact that Mrs. Hardy refused to show one of her customers, Mrs. Kay, the records of insurance that she had in effect during this period of time. However, Mrs. Hardy testified that she met with Mrs. Kay on one occasion and intended to show her the policies but she shortly thereafter terminated her employment with Security Industrial. This fact does not demonstrate sufficient probable cause.
In light of the foregoing, we do not find that Security Industrial rebutted the presumptions as outlined in Robinson, supra. Thus, we will not disturb the lower court’s findings with respect to this issue on appeal.
As previously stated, Security Industrial alleges that plaintiffs failed to introduce any evidence of malice in this case. We disagree.
In Borne v. Brown, 492 So.2d 6 (La.App. 1st Cir.1986), writ denied, 496 So.2d 355 (La.1986), the court concluded that malice may be inferred from the circumstances of a particular case. In the instant situation, the record indicates that when Mrs. Sargee terminated her employment with Security Industrial, Security Industrial tried to avoid its obligation to pay her all of the salaries and commissions which were due her. Sargee then filed suit against Security Industrial for the past due wages and commissions. Mrs. Hardy served as a witness on behalf of Mrs. Sargee in this suit. Security Industrial then filed suit against plaintiffs and prompted the District Attorney to investigate the matter. Security Industrial then gave the District Attorney information which, if viewed alone, would infer wrongdoing. Based on this information, Mrs. Hardy and Mrs. Sargee were charged with felony theft. We infer malice based upon the above sequence of events coupled with the fact that the officers and top employees of Security Industrial were aware that this was a false charge since the facts on which the theft charges were based was a common practice with Security Industrial. Thus, we reject defendant’s contention that malice was not present.
In Security Industrial’s second assignment of error, it urges that “The Court committed manifest error in failing to find that Security Industrial Insurance Company’s reliance on advice of counsel rendered it immune from liability for malicious prosecution.” We disagree.
Security Industrial cites several cases which stand for the' proposition that where a litigant has made full disclosure to his attorney and has acted on his attorney’s advice honestly and in good faith, an action for malicious prosecution will not lie. While this proposition of law is correct, it is obvious that full disclosure was not made in this case. These cases do not apply to the situation where only part of the facts are given to the attorney and the attorney then submits a recommendation. If only half of the facts are given to an attorney, an attorney cannot make a good faith, honest recommendation on how to proceed. Had Security Industrial made a full disclosure, a letter would never have been sent to the District Attorney. The Natchitoches Parish District Attorney only had before him those facts that were submitted by Security Industrial.
The District Attorney’s independent investigation added little to the true facts which were subsequently learned. Thus, we find that the cited cases are not controlling.
Security Industrial, in its third assignment of error, urges that “The Court committed manifest error in awarding $10,-000.00 each to the plaintiffs.” We disagree.
*1281 The record reflects that Mrs. Sargee is 57 years old and has never been charged with any other offense. Mrs. Hardy also has always been a law-abiding citizen. Mrs. Sargee testified that this ordeal was on her mind every day of the week and that she had to constantly explain to friends and relatives exactly what took place and why this whole unpleasant ordeal occurred. Both plaintiffs testified that they have never been more humiliated and embarrassed in their lives. Mrs. Sargee had to retain an attorney to obtain the money which was due her in the civil court hearing. Both plaintiffs had to retain an attorney to defend them in the civil case initiated in Ascension Parish. Additionally, both plaintiffs had to retain an attorney to defend them on the criminal charges that were brought against them. Finally, plaintiffs had to retain an attorney to proceed for them in the present action.
All of the above, taken as a whole, leads this court to the conclusion that the trial court was within its discretion when it awarded each plaintiff $10,000.00. Such amount is clearly not excessive considering the facts of the instant case.
In Security Industrial’s final assignment of error, it asserts, in part, that the court conducted the trial in an unfair manner, that the court prejudiced the case, and that it had preconceived notions as to the testimony of the witnesses. After carefully reviewing the record in its entirety, there simply is no evidence of this assertion. Moreover, Security Industrial asserts that the trial court erred in its refusal to allow it to proffer evidence of a certain indebtedness of Hardy. Under La.C.C.P. art. 1636, Security Industrial should have been permitted to make the proffer, but we find that such error does not affect our final analysis and decision to affirm. See Lemon v. Houston Fire & Casualty Insurance Co., 162 So.2d 127 (La.App. 1st Cir.1964). For the aforementioned reasons, we reject defendant’s final assignment of error.
Accordingly, for the reasons assigned, the judgment of the lower court is affirmed. All costs are assessed to defendant-appellant.
AFFIRMED.